## J. O. LENNING v. RETAIL MERCHANTS MUTUAL FIRE INSURANCE COMPANY.[1]

November 2, 1917.

No. 20,519.

**Insurance — incorporation of insured after issue of policy — knowledge of insurer before renewals.**

1. In December, 1907, defendant issued its certain policy of insurance

[1]Reported in 164 N. W. 908.

to the copartnership of Seaman & Martin; in July, 1909, during the life of the policy the members of the copartnership formed a corporation under the name of Seaman-Martin Company; defendant continued thereafter to renew the insurance and it was in force at the time the property covered thereby was destroyed by fire on April 10, 1911. It is *held*, following a former decision in the case: (a) That the evidence presented a question of fact upon the issue whether defendant had knowledge of the formation of the corporation, and with that knowledge issued and renewed the policy of insurance upon which the action is founded, knowing also that the corporation then owned the insured property; and (b) that the verdict of the jury thereon is not clearly against the weight of the evidence.

**Same — admission of evidence.**

2. There were no errors in the admission of evidence.

**Same — payment of premium waived.**

3. The evidence justified the jury in finding that defendant waived the prompt payment of the premium due on the policy preceding the fire.

**Same — case followed.**

4. General Statutes 1913, § 3306, and the by-laws of the company, which form a part of the insurance contract, to the effect that a failure to pay the premium within the time thereby prescribed shall without notice or other act on the part of the company void the contract, do not preclude a waiver of such payment by the acts and conduct of the insurance company. Johnson v. Retail M. M. F. Ins. Co. 112 Minn. 418, followed and applied.

Action transferred to the district court for Hennepin county to recover $2,503.83 upon defendant's policy of insurance. The answer expressly denied that at any time defendant issued or delivered its policy to Seaman-Martin Company, alleged that in November, 1909, it issued its policy agreeing to insure Seaman & Martin, a copartnership, and a renewal of the same in November, 1910, and that it intended to insure the partnership and did not intend to insure the corporation. The answer also set out defendant's by-law that a policy should be void upon failure of a member for 60 days to pay the premium. The case was, tried before Dickinson, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony its motion for a directed verdict, and a jury which returned a verdict for $3,357.62.

From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.   Affirmed.

*Ernest Malmberg* and *Thomas Kneeland,* for appellant.

*Washburn, Bailey & Mitchell,* for respondent.

BROWN, C. J.

Action to recover upon a policy of fire insurance in which plaintiff had a verdict and defendant appealed from an order denying its alternative motion for judgment or a new trial.   A former appeal is reported in 129 Minn. 66, 151 N. W. 425.

It appears that F. S. Seaman and T. H. Martin sometime in 1904, as copartners under the firm name of Seaman & Martin, organized and established a mercantile business at Deer River, this state, and thereafter conducted the same until about June 1, 1909, when the business was transferred to a corporation the copartners were instrumental in forming at that time.   The corporation was named Seaman-Martin Company. The capital stock thereof was fixed at 50 shares, of which Seaman took 25 shares, Martin 20 shares, and two and one-half shares were issued to Martin's wife.   Thereafter the business was conducted substantially as before the formation of the corporation.

In November, 1907, on proper application defendant, a mutual mercantile insurance company, issued to the copartnership an insurance policy covering the stock of goods and fixtures in their store building, which expired by its terms on December 8, 1908.   Prior to such expiration defendant, without any new application, renewed the policy for another year, or until December 8, 1909.   During the life of this renewal and on about June 1, 1909, the corporation was formed and took over the property and business covered by the insurance as heretofore stated. In November, 1909, following the organization of the corporation the defendant, without any application therefor, issued a new policy insuring the same property from December 8, 1909, to December 8, 1910.   The policy was issued to Seaman & Martin, and transmitted to the firm at Deer River, but was received by the officers of the corporation.   Defendant claims that at the time of issuing this policy and the subsequent renewal thereof it had no notice or knowledge of the corporation or of the change in the ownership of the property, and supposed and understood

that it was still dealing with the copartnership. The premium for this policy was due 60 days from the date thereof, or early in February, 1910. It was not paid, and for the default defendant gave notice of the cancelation of the policy on July 27, 1910. Upon the receipt of this notice the officers of the corporation immediately remitted the amount of the premium, which defendant received and retained though it made no formal reinstatement of the policy. In November following defendant recognized the policy so canceled as an existing contract by the issuance of a certificate of renewal, thereby extending the policy up to December 8, 1911. This renewal was issued a year and six months after the formation of the corporation, but the certificate of renewal was in the name of Seaman & Martin. The premium for this renewal was due on February 8, 1911, but it was not paid. The property covered by the insurance was destroyed by fire on April 10, 1911. Thereafter and on the same day the corporation remitted the amount of the premium, by draft or check, which on the thirteenth day of April was returned by defendant with the statement that the policy had been canceled for the default in the payment of the premium within the time fixed by the contract. Due proofs of loss were thereafter made and served, but defendant refused to admit liability and declined payment. This action was then brought by plaintiff, an assignee of the policy, to recover thereon.

Two questions of fact were submitted to the jury on the trial below, namely: (1) Whether any contract was ever entered into between defendant and the corporation, successor of the copartnership; and (2) whether defendant waived the prompt payment of the premium which fell due on February 8, 1911. Both were answered by the verdict in plaintiff's favor. Defendant contends that the evidence is insufficient to support the verdict in either respect. This contention presents the principal question on this appeal.

On the former trial the action was dismissed when plaintiff rested, on the ground that the evidence wholly failed to connect the corporation with the contract, by bringing home to defendant at any time prior to the fire knowledge of the organization thereof, or the fact that the copartnership had ceased to conduct the insured business, or to connect the corporation with the contract in any other way. That view of the evidence we held erroneous on the former appeal, the conclusion reached

being that the evidence then presented made the question one of fact for the jury, and a new trial was granted. Insofar as the evidence now presented is the same as that received on the former trial that decision will be followed and applied as the law of the case. And unless the evidence shown by the present record is substantially different, and of a character to require the conclusion that defendant had no knowledge of the corporation at any time prior to the issuance or renewal of the policy in suit, from which it would follow as a matter of law that there existed no contract with the corporation, the action of the court in submitting the question to the jury must be sustained.

1. The result of a careful examination of the record, which was substantially added to by new evidence offered on this trial by both parties, is that a fair question of fact was presented, and that within the rule guiding us in such cases the verdict should not be disturbed. The additional evidence offered by plaintiff tends strongly to corroborate the claim that defendant in fact received information as to the change of ownership of the insured property prior to the issuance of the renewal certificate in December, 1910. While the secretary of defendant, who had sole charge of its business as respects the issuance of insurance policies and renewals thereof, denied such knowledge, his denial, though supported to some extent by other evidence, is insufficient to justify this court in concluding that the case as made by plaintiff's evidence was overcome.

The organization of the corporation and resulting change in ownership of the property was communicated to the Bradstreet Commercial Agency at Duluth, and by it communicated to the Minneapolis agency of the same company in July, 1909. Defendant was a subscriber in the Bradstreet Company, and made inquiry thereof and received from its officers from time to time information of and concerning the financial standing of the copartnership prior to the issuance of the policy of the date December 8, 1909, and prior to the renewal thereof in December, 1910. The evidence tends to show in this connection that it has always been the uniform custom of the Bradstreet Agency whenever information comes to it of a change in the ownership of property, which involves the interests of its subscribers, promptly to communicate the fact to such subscribers. And the officer in charge of this branch of the agency work testified that he assumed and believed, though he had no positive knowl-

edge on the subject, that the custom was followed in this instance, by the transmission to defendant of the information that the corporation had been organized by members of the firm, and had taken over the business and property covered by the insurance. Defendant's secretary testified that he had no recollection of receiving any such information and denied the same. But the matter was not of a recent occurrence, and in the volume of work imposed upon him, the receipt of the information may have been forgotten or mislaid, and it was for the jury to say whether in his denial he was or was not mistaken.

Other circumstances disclosed by the evidence strongly corroborate the claim that the notice was received, a recital or discussion of which will serve no useful purpose. Our conclusion on the evidence as a whole is that the question was properly submitted to the jury.

2. The question whether defendant waived the failure to pay the premium within the time prescribed by the contract does not require extended discussion. General Statutes 1913, § 3306, as well as the by-laws of the company, provide that the failure of payment of the premiums in insurance contracts of this kind within 60 days from the date of the policy shall void the same without notice or other act on the part of the company. The premium due for the renewal of the policy in question, which extended the insurance from December, 1910, to December, 1911, was not paid within the time stated in the statute, but was some 60 days overdue at the time of the fire. That there can be a waiver in such a case, notwithstanding the by-law and the statute, was settled by the case of Johnson v. Retail Merchants M. F. Ins. Co. 112 Minn. 418, 128 N. W. 462. It appears in the case at bar that each policy and renewal thereof extended the insurance for one year only, and there was therefore an annual premium to be paid. From the issuance of the first policy to the copartnership down to the date of the fire there was at no time a compliance with the contract in this respect, and the default in payment of the premium was in practically every instance from 60 to 90 days beyond the due date. Defendant had given encouragement to this method of payment by adopting the practice of sending a monthly statement of the premiums due, and of accepting them whenever remitted by the insured. In one instance only did the company take effective action to put an end to the continuous delays, and that was in July, 1910,

when the policy was declared canceled and forfeited for the failure to pay the premium due in the preceding February. But notwithstanding that declaration, which was served upon the insured, a remittance made immediately following the cancelation was promptly accepted, the policy continued in force, and in December following renewed for another year. Thereafter defendant continued the practice of making monthly statements of the premiums due; one was sent to the insured on April 1, a few days before the fire. The premium was due in February. We are clear within our decisions in other like cases, that this conduct constituted a waiver of strict compliance with the contract and defendant cannot now be heard to invoke the statute or the by-law declaring a forfeiture for nonpayment; at least the evidence presented a question for the jury, and fully supports the verdict. Mueller v. Grand Grove U. A. O. D. 69 Minn. 236, 72 N. W. 48; Leland v. Modern Samaritans, 111 Minn. 207, 126 N. W. 728; Villmont v. Grand Grove U. A. O. D. 111 Minn. 201, 126 N. W. 730; Sauerwein v. Grand Lodge O. S. H. 121 Minn. 229, 141 N. W. 174; Dougherty v. Supreme Court I. O. F. 125 Minn. 142, 145 N. W. 813. In disposing of this feature of the case we have considered the conduct of defendant during the time the copartnership was the insured, as characterizing its conduct subsequent to the change of the relations between the parties by the formation of the corporation, and taken together there is shown a continuous waiver of the failure to make prompt payments. There was no error in the admission of the evidence tending to show such continuous waiver.

3. Defendant assigns as error several rulings in the admission of evidence. We have given each of these assignments careful attention with the result that no error of a substantial character is found; at least no error of sufficient consequence to justify a third trial of the action. Dunnell, Minn. Dig. 1916 Supp. § 7180.

Order affirmed.