# WALLACE H. GREEN v. MINNESOTA FARMERS MUTUAL INSURANCE COMPANY.[1]

November 10, 1933.

No. 29,571.

*Frank J. Lorenz* and *E. V. Molle,* for appellant.
*Hall & Catlin,* for respondent.

*DEVANEY, Chief Justice.*

On March 21, 1931, plaintiff, the owner of certain farm land, applied for and received from defendant insurance company a hail

[1]Reported in 251 N. W. 14.

insurance policy in the amount of $2,500 covering crops to be grown on the land for the succeeding five years. Plaintiff duly paid the survey fee at the time of the issuance of the policy and was obligated to pay nothing more until October 1, 1931, at which time the annual premium of $125 became due. Plaintiff was unable in October, 1931, to pay the necessary premium, but he did pay $25 sometime in December, 1931, and another $25 sometime in April, 1932. No further premium payments were made, and on the 20th of July, 1932, a substantial part of plaintiff's crop was damaged by hail. Plaintiff duly notified the company, and the parties determined the amount of loss under a nonwaiver agreement, fixing the sum at $1,509.41. The defendant subsequently refused to pay the loss, and after due demand plaintiff commenced this suit. Defendant contends that, since the 1931 premium was not paid on the due date, plaintiff cannot recover because of a certain term of the policy which suspended the same without notice or further act by or on behalf of the company if the premiums were not paid for 60 days after notification thereof. Plaintiff, on the other hand, contends that even though the 1931 premium payment was delinquent, defendant waived this right of suspension given it by the policy. The case was tried without a jury. The trial court found that defendant had waived its right to suspend the policy and pronounced judgment for plaintiff in the amount ascertained in the nonwaiver agreement, less $75, the unpaid balance of the 1931 premium. From an order denying its motion for a new trial defendant appeals.

The case involves three issues:

(1)   Can defendant waive the conditions which are inserted in its policy and by-laws for its benefit?

(2)   Did the agent, Hansen, have authority to waive the suspension provision of this policy?

(3)   Assuming that the agent had authority, did his conduct and course of dealings with the plaintiff and did the acts of the officers and admittedly authorized agents of the company constitute a waiver of its right of suspension?

■   The by-laws of defendant company, attached to and made a part of the policy, provided (art. V, § 6):

"Upon failure by any member for 60 days after notification thereof to pay any premium, survey fee, or assessment made upon his policy, such policy shall be and become suspended without notice or further act by or on behalf of the company. * * * the company shall not be liable for any loss or damage from date of such suspension to date of reinstatement."

Admittedly this is a provision operating in favor of the insurer. The by-laws further provide (art. V, § 4) :

"The application, policy, and by-laws of this company now in force or as hereinafter enacted or amended constitute the entire contract between the company and its members and no agent is authorized to enter into any agreement which alters said contract in any particular."

This also was a provision incorporated in the policy by the insurer for its benefit. That any provision operating to work a forfeiture of the policy in favor of the insurer may be waived by it is too well settled to require any extensive citation of authority. In Knickerbocker L. Ins. Co. v. Norton, 96 U. S. 234, 240, 24 L. ed. 689, the court, speaking of waiver, said:

"The company was not bound to insist upon a forfeiture, though incurred, but might waive it. * * * [Such a waiver] would not be repugnant to the written agreement, because it would only be the exercise of an option which the agreement left in it [the company]. And whether it did exercise such option or not was a fact provable by parol evidence, as well as by writing, for the obvious reason that it could be done without writing."

Accord, see Parsons, Rich & Co. v. Lane, 97 Minn. 98, 104, 106 N. W. 485, 4 L.R.A.(N.S.) 231, 7 Ann. Cas. 1144; Cope v. Jefferson S. L. Ins. Co. 134 S. C. 532, 133 S. E. 440.

In effect it has been held that even a provision that no agents, or that only specified agents, have power to effect a waiver may itself be waived by the insurer. In speaking of such a nonwaiver provision, in Marblestone Co. v. Phoenix Assur. Co. Ltd. 169 Minn. 9, 12, 210 N. W. 385, the court said:

"It may be inaccurate to speak of waiving a nonwaiver clause. The cases use such language; and the authorities are that the existence of a nonwaiver clause does not prevent a waiver."

Such nonwaiver clauses, being inserted in the policies for the insurer's benefit, may be waived in the same manner as may any other clause inserted therein for its benefit. Accord, see Fender v. New York L. Ins. Co. 158 S. C. 331, 155 S. E. 577; 2 Couch, Insurance, § 522, p. 1493. Though the statute, 1 Mason Minn. St. 1927, § 3542, permits mutual companies to incorporate into their policies a provision that upon failure of any member for 60 days after notification thereof to pay any premium or assessment made upon his policy such shall lapse or become suspended, this statutory authorization in no manner affects or limits the right of the company to waive or forego its undoubted right to suspend the policy according to this 60-day provision. It previously has been held that mutual fire insurance companies may waive by-laws made pursuant to this section of the statute. Lenning v. Retail Merchants Mut. F. Ins. Co. 138 Minn. 233, 164 N. W. 908. See Johnson v. Retail M. M. F. Ins. Co. 112 Minn. 418, 422, 128 N. W. 462, 464, where, in speaking of this statute, it was said:

"Therefore, so far as the statute is concerned, there was no intention to deprive mutual fire insurance companies of the power to waive the effect of nonpayment of premiums."

We therefore conclude that defendant company had full right to waive the provisions of its contract or its by-laws inserted therein for its benefit.

■ Defendant insists that Hansen, a soliciting and collecting agent, had no authority or capacity to effect the waiver upon which plaintiff relies. The record discloses that Hansen was licensed by the state of Minnesota as an agent to sell hail insurance and was authorized by defendant company to solicit its hail insurance and to collect premiums. His name was carried under the designation of "L. P. Hansen, Agent," in the application for hail insurance signed by this plaintiff and made a part of the insurance contract. He had a monetary interest in this policy based on his right to com-

missions collected thereunder over the five-year period for which this policy had been written, "provided said agent [Hansen] * * * has rendered continued service in obtaining additional applications of insurance for this company." As we have pointed out, defendant could, if it desired, waive that provision of its policy denuding its agent, Hansen, of authority to act generally. As has been said in Knickerbocker L. Ins. Co. v. Norton, 96 U. S. 234, 240, 24 L. ed. 689:

"It [an insurance company] was not bound to act upon the declaration that its agents had no power to make agreements or waive forfeitures; but might, at any time, at its option, give them such power."

Defendant relies on the cases of Wilkins v. State Ins. Co. 43 Minn. 177, 45 N. W. 1; McMartin v. Continental Ins. Co. 41 Minn. 198, 42 N. W. 934; and Goldin v. Northern Assur. Co. 46 Minn. 471, 49 N. W. 246, 247, to support its claim that Hansen, a mere soliciting agent, was without capacity to waive any of the provisions of the policy. A careful reading of these opinions, especially the Goldin case, which seems most in point, indicates that there is little similarity between the facts of these cases and the admitted facts in the present case. In the Goldin case the soliciting agent, Jacobson, was just that and no more. His connection with the facts upon which was based the claim of waiver was, as the court said, "casual conversation" "suggested by mere curiosity." The court says [46 Minn. 473]:

"But, even if Jacobson had the authority to do so, there is nothing in the evidence from which it can be found, even by inference, that he ever in fact consented to additional insurance or waived the conditions of the policy."

We think it will be granted that in this case there was more than a "casual conversation" "suggested by mere curiosity." Hansen's name appeared on the policy, he was the local agent of defendant in this wide territory admittedly intrusted by it with the duties of solicitation and collection. His interest in the policy did

not cease on the delivery of the policy as was the case in Goldin v. Northern Assur. Co. 46 Minn. 471, 49 N. W. 246. Courts are reluctant to permit insurance companies to limit the authority of agents or to exonerate themselves from liability for the acts of agents, as was said in Richardson v. Brotherhood, 70 Wash. 76, 79, 126 P. 82, 41 L.R.A. (N.S.) 320:

"This court has consistently and steadily adhered to the view that it will not permit an insurance company, whether it be an old line company or a fraternal organization, to change the fundamental law of agency by contract, and thus exonerate itself from liability for the acts of those who are in fact and law its agents."

From all of the facts we find that Hansen had ample authority and capacity to bind the defendant and that by his conduct and course of dealing with defendant he is shown to be something more than a mere solicitor or collector.

"In the nature of things it is impossible that the powers of any agent can be fixed by his title. The possession of authority, whether actual or apparent, is a question of fact, not of words. * * * The question whether any given act of an agent binds his principal is to be decided by determining whether the third party had reasonable grounds for believing, under all the facts of the case, that the principal had authorized that act. If such reasonable ground does exist, the principal is bound, whether the agent has been entitled 'general agent,' 'solicitor,' or 'president.'" Vance, Insurance (2 ed.) § 118, p. 415.

■ The only other question is whether the evidence is sufficient to support the finding that the "company, by its acts and agreement with the plaintiff, waived said provision in the policy and waived the effect of the nonpayment of premiums, and said policy of insurance was not suspended at the time of the loss * * *." We think it is. Hansen visited plaintiff's farm in December, 1931, and in March, 1932, on each occasion receiving from the plaintiff $25 to apply on the delinquent premium due October 1, 1931. On the occasion in March, 1932, a check was given, dated March 17, with the request that it be held until April 17, which check was

cashed by the company sometime in April, 1932. There was evidence of an agreement made at the time of the giving of this check to the effect that upon payment of this $25 the company would carry plaintiff until next fall. Plaintiff's testimony was to the effect that at that time he told Hansen that he had no money with which to pay the premium; that he had already sold himself short of grain to pay his personal property tax; that he would give Hansen a $25 check to be held until he could sell his hogs, but that he wanted to know "what we are going to do toward making settlement with the company," and explained that he desired to keep the policy in force. Plaintiff further testifies that Hansen at that time said to him: "You pay no attention to what the company writes you * * * We will carry you until fall," and gave him to understand that he, plaintiff, need not worry. Further, it is undisputed that monthly statements and one letter were mailed from the company's office to plaintiff prior to Hansen's visit to his farm in March, 1932. After that date no further statements were received by plaintiff, and his only contact with defendant was the letter directed to him by defendant's attorney dated April 22, 1932. Is it not fair to assume from these facts that Hansen's visit to plaintiff in March, 1932, which brought an end to the monthly statements received by him from defendant, was the occasion of an understanding between plaintiff and the defendant acting through Hansen which brought a change in defendant's attitude and which, except for the letter from the attorney above referred to, marked a less insistent attitude on the part of defendant respecting the unpaid premiums? From this testimony and these facts the court could well find that an agreement to waive the suspension clause of this contract was entered into.

However, the acts and assurances given by the agent Hansen were not the only basis for plaintiff's claim of waiver of the company's right of suspension. The letters of defendant's president and of its attorney written to plaintiff during this period are most significant. On January 20, 1932, the president of defendant company wrote plaintiff respecting the $100 balance on premium due the company. This was almost 60 days after December 1, the date

on which defendant claims the suspension went into effect. Nowhere is there mention of suspension, but defendant's president says to plaintiff:

"Is it not your intent and purpose to play fair and be on the square with your fellow members or associates?"

We might well inquire with what fellow members or associates was plaintiff to play square if he had been automatically written out of the company 60 days previously. And again, on April 22, 1932, defendant's attorney writing the plaintiff under a letter headed "Re Hail Policy #40896" says:

"You have now had plenty of time in which to arrange to pay for your insurance."

"What insurance?" we may well inquire. Surely not plaintiff's if, as defendant contends, he had lost it through the automatic suspension of his policy almost five months before the letter was written. Particularly relevant here is the language of this court in Mee v. Bankers L. Assn. 69 Minn. 210, 218, 72 N. W. 74, 77:

"It [the insurance company] could not insist upon a forfeiture, and at the same time, by word or deed, treat the contract as still in force. The right to insist upon and enforce a forfeiture may be effectually waived if the party entitled to thus insist and enforce, after, and with knowledge of, the default, treats the contract as in force, and deals with the other party in a manner consistent only with a purpose on its part to regard the contract as still subsisting, and not terminated by the default."

We are assuming in the consideration of these facts that defendant at all times proceeded with an honest purpose, and at no time was there any thought or desire to act deceitfully or to lull the plaintiff into a false sense of security, and we are therefore obliged to conclude that defendant's president and attorney, in speaking of plaintiff's "fellow members or associates" and again of "your insurance," meant to be taken literally and that their failure at any time to mention or even to hint at the suspension of the policy indicates, as strongly as acts can indicate, that they intended to

waive the 60-day suspension provision and that they did just that. This was not "fair weather insurance," and the defendant will not be allowed to proceed as though the policy were in force, to give assurance to the insured and to give him no hint of the suspension of his policy until a loss had occurred and then to invoke the protection of a provision of its policy which it claims automatically worked a cancelation or suspension months prior to the date of loss. To permit this would be in effect to set at naught the settled rule of this court that forfeitures in insurance contracts are not favored and will be avoided wherever possible. Coughlin v. Reliance L. Ins. Co. 161 Minn. 446, 450, 201 N. W. 920; 3 Dunnell, Minn. Dig. (2 ed. & Supp.) § 4659.

We therefore conclude that the company had full power and authority to waive the provisions of the policy which created a forfeiture for its benefit, that the agent Hansen had the capacity to effect a waiver, and that the evidence is sufficient to support the trial court's finding that there was. in fact a waiver.

Order affirmed.

*STONE, Justice* (concurring).

I concur in the result. It is practically necessary that insurance companies reasonably limit the authority of their agents. Such limitations, when not waived, should be enforced. That a particular agent has a commission interest in premiums does not seem to me to bear one way or the other. But in this case the company itself, because of the sum of its direct dealings with the insured and those of Hansen, may be held to have waived the provision of its by-laws, part of the policy, which otherwise would have caused a lapse. In my opinion, decision should be put on the criteria of lapse before, rather than on those of forfeiture after, loss. Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660.