# AVIS C. REIN v. NEW YORK LIFE INSURANCE COMPANY.[1]

June 20, 1941.

No. 32,578.

[1]Reported in 299 N. W. 385.

*Austin & Wangensteen,* for appellant.

*Holmes, Mayall, Reavill & Neimeyer,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff's action to recover on an insurance policy issued by defendant upon the life of her lately deceased husband resulted in a verdict in her favor. The court, however, on defendant's alternative motion for judgment notwithstanding or a new trial, granted the former but denied the latter. Plaintiff appeals from that order.

The policy, issued June 28, 1937, in the amount of $5,000, provided for "double indemnity" if the insured should die from accident as therein limited and defined. It also contained this provision:

"Upon receipt by the Company at its Home Office of due proof * * * that the Insured has become totally disabled by bodily injury or disease so that he is and will be thereby wholly prevented from performing any work, following any occupation or engaging in any business for remuneration or profit, and that such disability has already continued uninterruptedly for a period of at least six months (such total disability of such duration being presumed to be permanent only for the purpose of determining liability hereunder)," the company will waive payment of premiums falling due after and during such disability if the disability occurs while the policy is in force, and if written notice thereof is received at its home office while the policy is in force, the insured is alive, and the disability continues.

By another important provision the company agreed to waive payment of premiums falling due after and during such disability if the disability occurred while the policy was in force, and if written notice thereof was received at its home office while the policy

was in force, the insured was alive, and while his total disability continued.

The annual premium was fixed at $68.25, out of which $8.40 represented the premium for the double indemnity benefit and $4.75 for the disability benefit.

In July, 1938, the annual premium then being past due but within the 31 days of grace provided by the policy, the insured having become totally disabled under the provisions of the policy, as claimed by plaintiff, the latter conferred with defendant's soliciting agent at Hibbing, one Louis Nides, in respect to receiving the benefits of waiver of further premiums. She testified that she inquired of Nides why she and insured were not entitled to a waiver of premiums; that he told her that the reason was that insured was not totally disabled "because he could drive a car, and because he could walk down Howard street [in Hibbing]," and that while they (meaning insured and plaintiff) "could put in a claim [for a waiver of premiums], but it would be useless." Upon the strength of that statement by Mr. Nides, so it is claimed, neither plaintiff nor the insured gave any notice nor did they file any proof of disability as required by the policy or otherwise. Mr. Nides denied the conversation.

Instead of paying the premium annually, the insured thereupon requested a change, a right under the terms of the policy, to pay it in quarterly installments. This was granted. He paid the next three premium installments, but the one falling due March 28, 1939, was not paid. The insured died sometime between May 10 and May 17, 1939, by drowning in Snowbank Lake in the northern part of St. Louis county. Obviously, this was more than 31 days after the March premium fell due.

The application for the policy, made part of the insurance contract, contains this language:

"That only the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts, or waive any of the Company's

rights or requirements; that notice to or knowledge of the soliciting agent or the Medical Examiner is not notice to or knowledge of the Company, and that neither one of them is authorized to accept risks or to pass upon insurability."

There is also an endorsement on the policy which reads:

"*Notice*—It is not necessary for the Insured or the Beneficiary to employ the agency of any person in collecting the insurance under this Policy, or in receiving any of its benefits. Time and expense will be saved by writing direct to the Home Office, 51 Madison Avenue, Madison Square, New York, N. Y."

So the determinative questions are: (1) Whether insured had become totally disabled within the meaning of the policy and as such entitled to the benefits provided thereby, and (2) whether the information given by plaintiff to Mr. Nides and his representations then made to her amounted to a waiver on the company's part of the requirement of notice and proof of disability.

Important, too, on this phase are the following policy provisions:

"Written notice of claim hereunder must be received by the Company at its Home Office during the lifetime and during the continuance of total disability of the Insured."

Also:

"No agent is authorized to make or modify this contract, or to extend the time for the payment of premium, or to waive any lapse or forfeiture or any of the Company's rights or requirements."

Concededly, there was here no such notice or proof furnished. Equally clear it is that the insurance contract had lapsed because of the failure to pay the stipulated premium falling due March 28, unless there is adequate proof to sustain the jury's finding of a waiver of notice and proof of total disability.

Mr. Nides' granted authority, which was in writing, was limited to that of a "special agent for the purpose of canvassing for applications for insurance on the lives of individuals, and of perform-

ing such other duties in connection therewith as the officers" of the company might "in writing expressly require of him." He had "no authority * * * to accept risks of any kind, to make, modify or discharge contracts, to extend the time for paying any premium, to bind the company by any statement, promise or representation, to waive forfeitures or any of the company's rights or customary requirements." Upon that basis Mr. Nides accepted his appointment and thereafter acted.

The court in an exhaustive and most helpful memorandum states its reasons for making the order here for review. The following excerpts are particularly pertinent:

"In the instant case, as I view it, there is no basis for a finding of any intent to defraud the insured on the part of Mr. Nides.

"It is a fairly close question as to whether the evidence would warrant a finding that the insured was so disabled as to be entitled to a waiver of premiums. He was capable in a measure to oversee his timber operations, to make trips to distant markets in connection with his business, to drive a car, and to walk, although only for a short distance, and in the conversation between the plaintiff and the agent she advised the agent that insured's health was then improving somewhat. When the agent stated to the plaintiff that insured was not entitled to a waiver of premiums because he could drive a car and walk on the street and with what knowledge the agent then had of the insured's condition, I am satisfied that he was giving her his honest opinion that the insured was not disabled to the required extent to make a valid claim for a waiver of premiums under the terms of the policy. * * *

"There is also in the insurance contract in question here a provision that in any event notice in writing of the claimed disability should be given to the home office during the lifetime of the insured and while the disability still continued.".

But, continued the court:

"Brushing aside all of the other questions raised by the defendant, and they are important, I am disposed to base this order upon

the ground that there was no waiver of the terms of the insurance contract nor is the defendant company estopped from asserting its claim that the policy had lapsed."

A reading of the lengthy record covering the insured's claimed total disability leaves no doubt that this was indeed a "close question." But we shall assume, as did the trial judge, that by "brushing aside" this question there still remained the problems of determining whether there was a "waiver of the terms of the insurance contracts," and whether defendant was "estopped from asserting * * * that the policy had lapsed."

The waiver upon which plaintiff's cause depends hangs by a very slender thread. Actual authority is expressly negatived by the contract of employment. By its terms, Mr. Nides was prohibited from making any promise or representation of binding effect upon his employer. Actual authority being absent, plaintiff must rely upon apparent authority. This has for its sole basis the conduct of Mr. Nides in his dealings with the insured and plaintiff. True, Nides had the company's name on his office door, and his stationery also bore its name. It was customary for him to give aid to policyholders in preparing their proofs of losses and forwarding them to the company's home office. By means of advertisements the public was invited to consult with the company's agents about insurance problems. But we find no proof that the company at any time waived its right to have any question relating to waiver or changes in its policy contracts determined by anyone other than its designated officers at its home office. The services rendered by agents of Mr. Nides' classification were rendered in harmony with granted authority, not in violation thereof. The "apparent" authority upon which plaintiff relies necessarily must be such as was "apparent" to the insured. How can it be said that in face of his policy engagements requiring notice to, and the furnishing of proofs of total disability at, the company's home office that "apparent" authority displaced and set for naught actually granted authority? Here, as in Wilkins v. State Ins. Co. 43 Minn. 177, 179, 45 N. W.

1, 2, the insured by accepting and retaining his policy was "bound to know" its terms and as such "is estopped from setting up powers in the agent in opposition to the express limitations contained in it." There the question was (43 Minn. 178, 45 N. W. 1) "whether the company was bound by the act of the agent in waiving immediate payment of the premium, and giving plaintiff credit. The policy contains a provision that 'no insurance shall be considered as binding until actual payment of the premium.' The same rules apply to insurance companies as to any other case of agency. They are bound by all the acts of their agents within the scope of the real or apparent authority with which they have clothed them, and no farther; * * * But it is the undoubted right of the company, as in the case of any principal, to impose a limitation ,upon the authority of its agents. And it is as elementary as it is reasonable that if an agent exceeds his actual authority, and· the person dealing with him has notice of that fact, the principal is not bound." *Cf.* McFarland v. St. Paul F. & M. Ins. Co. 46 Minn. 519, 49 N. W. 253; Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L.R.A.(N.S.) 231, 7 Ann. Cas. 1144; Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 203 N. W. 600; Sorenson v. New York L. Ins. Co. 195 Minn. 298, 262 N. W. 868.

As we have seen, here the policy expressly and unequivocally told the insured that only certain designated officers of the company "can make, modify or discharge contracts, or waive any of the company's rights or requirements." Further, that "no agent is authorized to make or modify this contract, or to extend the time for the payment of premium, or to waive any lapse or forfeiture or any of the company's rights or requirements." We find nothing of fraudulent or deceitful conduct on the part of Mr. Nides. That, too, was the view of the trial judge. At the time insured and plaintiff conferred with him the 1938 annual premium was due. To keep the policy from lapsing, Mr. Nides suggested the change from an annual premium payment to quarterly ones. The insured then requested such a change, the policy provisions in this respect being complied with. Thereafter nothing further was

said or done by either the insured or Mr. Nides except that insured made three of the quarterly payments, for which he received the company's official receipts. It is therefore apparent that the insured acquiesced in the new arrangement.

The next event of importance is the insured's trip to Snowbank Lake. He left alone on May 7, 1939, driving his truck from Fraser to Ely, a distance of some 50 miles. This was on his way to the lake, where later, on May 17, his body was found, death being caused by drowning. Upon arrival at Ely, he made arrangements with one Harri to take him by airplane to Snowbank Lake. He had with him a packsack containing groceries, traps, and an axe. In addition, he had a rifle and a fishpole, also a bundle. The total weight of his equipment was between 40 and 50 pounds. He got in and out of the airplane without aid. Mr. Harri noted that he had a slight limp in walking and that he was not able to crank the airplane. Otherwise there was nothing unusual about him to distinguish him from any other person.

If plaintiff's theory were to be accepted, then deferment over a period of years of the fatal result here obtaining could with equal propriety be asserted to relieve the insured of compliance with policy requirements. Virtually no outstanding policy would be immune to the assertion of the same or a similar waiver as the one here relied on. If plain policy requirements may be waived under such circumstances as here disclosed, there will indeed be opened a "fertile field for those so disposed to mulct insurance companies by fraudulent practices and manufactured conversations." That was the view of the trial judge, who however was careful to say that he did "not intend to indicate that such is the case here, but such a holding would offer a great temptation to such as may be so inclined."

The case of Stark v. Equitable L. Assur. Society, 205 Minn. 138, 140, 285 N. W. 466, 467, upon which plaintiff heavily relies, is not of any help to her here. There, the general demurrer admitted the allegations of the complaint to the effect that the agent making the representation was defendant's "duly appointed agent" and

that "defendant and its agent then and there represented to plaintiff that he had no claim for benefits," etc. under his policy. Here, the undisputed proof shows that the agent possessed only limited authority. There is also this additional distinction between that case and this: In the former there was an invitation to the insured to communicate (205 Minn. 139, 285 N. W. 467) not only with the assurance society but also to "communicate with the nearest authorized agent of the society whose duty is to facilitate all settlements without charge." Here, the invitation or direction is limited to the home office and "by writing direct" to that office. No agent, local or otherwise, is suggested. The home office alone is the place to which communications are to be sent.

This case is also unlike Kassmir v. Prudential Ins. Co. 191 Minn. 340, 347, 254 N. W. 446, 450. In that case the question was not timeliness of notice of disability, but rather and only, as stated by the insurance company, "the question at issue is whether the insured was able to work, and whether he worked." We there said that the determinative question was "whether or not the insured had become totally and permanently disabled while the policy was in force and remained in that condition until his death."

The purpose of requiring the prompt furnishing of proof of loss under any policy of insurance is to provide the insurer with such information as to permit it to investigate the facts and determine whether there is liability on its part. Wold v. State Mut. L. Assur. Co. 198 Minn. 451, 270 N. W. 150. That this is an important matter for the insurer's protection is apparent. Undoubtedly many claims of this and other types arise from time to time. Actuarial basis for fixing premium rates requires inquiry into the facts in any given case. And where, as here, there is no ambiguity in the provision of the policy, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. It is of course important that ambiguous language should not be permitted "to serve as traps for policyholders," yet it is equally important, "to the insured as well as to the insurer, that the provisions of insurance policies which are

clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations." Williams v. Union Cent. L. Ins. Co. 291 U. S. 170, 180, 54 S. Ct. 348, 352, 78 L. ed. 711, 718, 92 A. L. R. 693. *Cf.* Juster v. John Hancock Mut. L. Ins. Co. 194 Minn. 382, 385, 260 N. W. 493.

Order affirmed.

PETERSON, JUSTICE (dissenting).

So far as it goes, there is no objection to the views expressed by the majority. There are other facts, however, which control decision under well established rules of law.

There is undisputed evidence of conduct to show Nides' authority as defendant's agent to waive proof of disability entitling the insured to a waiver of all premiums subsequent to June, 1938. Defendant's regional agents, under whom Nides performed his duties as agent, testified that it was the company's "policy" to encourage policyholders and claimants to consult with it and its agents concerning any problem, claim, or right under its policies, including "claims concerning disability arising under life policies." It held itself and its agents out as "experts" to advise and assist in such matters. Its agents assisted beneficiaries in preparing and transmitting proofs of claim. Nides testified that he pursued the company's "policy" in this respect. Not only did he invite the holders of policies, which he wrote, to consult and advise with him; but he "serviced" such policies, and received and transmitted notices, claims, and proofs of claim under life policies. This he had done for a period of about 15 years in an office and on stationery bearing the company's name and his name as the company's agent. He serviced the policy involved here by notifying the insured in June, 1938, that his policy would lapse and induced him to pay premiums on a quarterly basis to keep it alive.

Nides conducted a life insurance agency office in a building in Hibbing. He corresponded with the company's regional and home offices on the stationery bearing both the company's and his name

as its agent as well as with the Reins. He used such stationery in transmitting notices and proofs of claim on behalf of claimants under the company's policies. He established friendly relations with those who had business with him. He addressed the plaintiff and the assured by their given names, and they called him "Louie." They went to him concerning their insurance problems as the company's agent in charge of such matters.

■ The obvious purpose of the so-called "nonwaiver provisions" is to enable the company to circumvent the operation of the rules of waiver and estoppel which otherwise bind the company as a result of the acts or knowledge of its agents. Such clauses have no application here.

The nonwaiver clause relates to the formation of the insurance contract and not to the conditions which were to be performed afterward such as notice or proof of loss. Green v. Minnesota Farmers Mut. Ins. Co. 190 Minn. 109, 251 N. W. 14; Reilly v. Linden, 151 Minn. 1, 186 N. W. 121; C. S. Brackett & Co. v. General Acc. F. & L. Assur. Corp. Ltd. 140 Minn. 271, 167 N. W. 798; Lamberton v. Connecticut F. Ins. Co. 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222; Couch, Insurance, § 548, note 69.

Plaintiff does not rely on a waiver of any of the contractual provisions relating to the formation of the contract. Rather, she contends that, while the contract is exactly as stated in the policy, defendant has waived certain provisions relating to its performance after the right to the waiver of future premiums accrued—those relating to furnishing proof of disability.

■ There can be no doubt that an insurance company may define and limit the authority of its agents and that such limitations upon an agent's authority are binding on all who have knowledge of them. Here, the company imposed restrictions and limitations on the authority of its agent Nides by the several writings mentioned.

Neither the company nor its agents, however, observed the terms of the written authority in conducting its business. The evidence

shows that its agents with its knowledge, if not by its direction, performed many acts outside their written authority. As a matter of company "policy" and for obvious business reasons, it had its agents service policies and advise policyholders and claimants concerning their rights under its policies. In addition, it sought to control all negotiations between itself and policyholders and claimants by having its agents in charge of such negotiations with the plain purpose that policyholders and claimants should not have the disinterested advice and assistance of their own counsel. See Stark v. Equitable L. Assur. Society, 205 Minn. 138, 285 N. W. 466.

Instead of the situation supposed by the majority, that the company conducted its business through its agents with authority restricted and limited in writing, the fact is that the written authority was quite disregarded. The writings were modified by permitting, if not requiring, agents to exercise authority inconsistent therewith, consisting of the authority to receive and transmit claims under policies and to give advice concerning losses and claims, and holding them out as possessing such authority.

The agency contract and other writings between the company and the agent do not measure the agent's authority in a case where, as here, additional authority is granted by parol. "The principal has the right to impose lawful restrictions and limitations upon the agent, and they are binding and conclusive upon all who have knowledge of them, *provided the principal has done nothing inconsistent by which such limitations are nullified.*" 1 Dunnell, Minn. Dig. (2 ed. & 1937 Supp.) § 156. In 2 C. J. S., Agency, § 92, pp. 1191-1192, the rule, which we followed in Dayton v. Nell, 43 Minn. 246, 45 N. W. 231, is thus stated:

"The doctrines announced apply only in case the agent's conduct purports to be in pursuance of the power created by the written instrument; if, in addition to the authority thus given, other authority has been conferred upon him by an independent parol agreement and the transaction in question relates to the latter,

questions with reference to knowledge or notice of the prior written authority are no longer of vital importance."

That the company could waive and enlarge the policy and contract provisions relating to the powers of its agents needs no argument. In Lamberton v. Connecticut F. Ins. Co. 39 Minn. 129, 39 N. W. 76, 77, 1 L. R. A. 222, *supra*, in holding that a company through its agent could waive policy provisions by parol waiver, notwithstanding a provision therein that there could be no waiver of any provisions of the policy unless such waiver was endorsed thereon in writing, we said:

"That is to say, in other words [referring to the contention that there could be no parol waiver], that one of the parties to a written contract, which is not required by law to be in writing, cannot, subsequent to the making of the contract, waive, by parol agreement, provisions which had been incorporated in the contract for his benefit. A contracting party cannot so tie his own hands, so restrict his own legal capacity for future action, that he has not the power, even with the assent of the other party, to bind or obligate himself by his further action or agreement contrary to the terms of the written contract."

In Koivisto v. Bankers & Merchants F. Ins. Co. 148 Minn. 255, 181 N. W. 580, the rule was applied in holding that an insurance company was liable under a policy of fire insurance issued by an insurance agent with actual authority to take applications for policies of insurance, but with apparent authority to issue policies of fire insurance.

In Kilborn v. Prudential Ins. Co. 99 Minn. 176, 108 N. W. 861, and Godfrey v. New York L. Ins. Co. 70 Minn. 224, 73 N. W. 1, we held that an insurance company was liable under a policy where the agent accepted a promissory note in payment of the first premium in the exercise of apparent authority notwithstanding positive written instructions to the contrary. We have held that an agent with similar authority may waive proof of disability. Wold v. State Mut. L. Assur. Co. 198 Minn. 451, 270

N. W. 150. See James B. Clow & Sons v. A. W. Scott Co. 162 Minn. 501, 203 N. W. 410.

The fact that the written contract appointed Nides as a soliciting agent did not preclude his appointment as agent for other purposes. Where, as here, an insurance company by the course of its dealings recognizes its local or soliciting agent as authorized to receive and transmit proofs of loss and to advise and assist its policyholders and beneficiaries under its policies in asserting their rights against the company, such agent's authority comprehends the power to waive proof of disability entitling the insured to waiver of future premiums. Life Ins. Co. of Virginia v. Williams, 48 Ga. App. 10, 172 S. E. 101; Feinberg v. New York L. Ins. Co. 233 Mo. App. 707, 127 S. W. (2d) 82; New York L. Ins. Co. v. Riggins, 178 Okl. 36, 61 P. (2d) 543; 29 Am. Jur., Insurance, § 1138.

In the view of the evidence most favorable to the company, the question whether or not Nides had authority to waive proof of claim of disability was a jury question. Whether or not he exercised such authority in the instant case was also a fact question. On both questions the findings of the jury are sustained by the evidence.

For the reasons stated, the order should be reversed.

GALLAGHER, CHIEF JUSTICE (dissenting).

I agree with the dissent of Mr. Justice Peterson.