VON UHL, Respondent, v. TREMPEALEAU COUNTY MUTUAL INSURANCE COMPANY, Appellant.

*November 2—November 29, 1966.*

For the appellant there was a brief by *Fugina, Kostner, Ward, Kostner & Galstad* of Arcadia, and oral argument by *La Vern G. Kostner*.

For the respondent there was a brief and oral argument by *Burr Tarrant* of Whitehall.

BEILFUSS, J. The sole issue is: Was the fire and wind damage insurance policy suspended on April 13, 1964?

Ch. 202, Stats., regulates town mutual insurance companies in Wisconsin. Particularly involved in this case is sec. 202.11, which in part provides:

"**Assessments; notices; nonpayment; borrowing money.** (1) When the amount of any loss shall exceed the funds on hand the president shall convene the board of directors who shall levy an assessment which shall be at the same rate upon all property insured at the time of the loss. The board may assess up to any amount necessary to pay incurred losses and expenses and may include in such assessment an amount not exceeding two mills in anticipation of future losses. The board may also levy an assessment at any time for the purpose of carrying on the business of the company including payment of losses, expenses, reinsurance, borrowed money or the establishment of reserves.

". . .

"(4) Every member who shall fail to pay his assessment within the time specified in the notice sent to him shall pay to such corporation a fine of 2 per cent of the amount of such assessment for each week or part thereof during which the same shall remain delinquent, and no payment shall be made by the company upon the policy of any member if at the time he shall suffer a loss he shall be in default and shall have failed to pay his assessment prior to the expiration of 30 days from the time limited in said notice."

The trial court concluded that Von Uhl should recover because the company's acceptance of the partial payment of the 1963 assessment, together with its past record of

accepting late payments, were sufficient to constitute a waiver of the timely payment provision of sec. 202.11 (4), Stats.

The terms "waiver" and "estoppel" are often not distinguished and used interchangeably. "Waiver" is the voluntary and intentional relinquishment of a known right; intent to relinquish the right is an essential element of waiver. "Estoppel," on the other hand, consists of the action or nonaction of one party which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. Further, intent to waive may arise as a matter of law from the conduct of the parties, or may be determined as a question of fact where the inference does not conclusively arise as a matter of law. *Hanz Trucking, Inc., v. Harris Brothers Co.* (1965), 29 Wis. (2d) 254, 264–267, 138 N. W. (2d) 238.

In the instant case there are no stipulated facts directly indicating that the company intended to relinquish its right to timely payment. While it may be inferred from the facts that the company intended to waive its rights, this appears more properly to be a case of estoppel because of Von Uhl's claim that he relied on the company's conduct to his detriment. Whether it be waiver or estoppel in this instance, the legal effect is the same.

The company contends that the requirements of sec. 202.11 (4), Stats., may not be waived by a town mutual insurance company, and even if the statute can be waived, it was not waived in this case.

The pertinent part of sec. 202.11 (4), Stats., provides:

". . . no payment shall be made by the company upon the policy of any member if at the time he shall suffer a loss he shall be in default and shall have failed to pay his assessment prior to the expiration of 30 days from the time limited in said notice."

In support of its position the company relies upon the letter of the statute, claiming that after partial payment Von Uhl was still "in default" under sec. 202.11 (4), Stats., so long as he owed any part of the $70.80 assessment. The company further asserts that the statutory mandate of sec. 202.11 (4) cannot be waived by private parties. For support of this proposition it relies upon the following statement in *Jones v. Preferred Accident Ins. Co.* (1938), 226 Wis. 423, 425, 426, 275 N. W. 897:

"Because that provision is required by statute, it is mandatory and obligatory on the insured, as well as the insurer, and there is applicable the rule that when the legislature has declared—

" 'the public policy of the state to be that that which had theretofore been subject to contract between the parties shall hereafter be by certain prescribed forms and with specific conditions concerning the respective rights and duties of the parties thereto, the statutory provisions step in and control and regulate the mutual rights and obligations rather than the provisions of any contract the parties may attempt to make varying therefrom.' [Case cited.]

"When the legislative will is expressed in the peremptory terms of such a statute, it 'is paramount and absolute, and cannot be varied or waived by the private conventions of the parties.' "

The bylaws of the company (which were incorporated within Von Uhl's policy) provide that all policies are "subject to the provisions of the Wisconsin Statutes." There is no question that Von Uhl failed to pay any part of his July 31, 1963, assessment within thirty days from the time limited in the notice.

Town mutuals are mutual benefit insurance societies which annually levy proportionate assessments on members to cover payment for casualty losses incurred by members during the previous year. Timely payment of the assessment puts a member's policy in effect for the next year. The companies also make special assessments

when their reserve funds get low. Several times this court has adjudged the legal effect of bylaws of mutual fire insurance companies and statutes which provide that no payment shall be made for losses occurring to a policy-holder in default of payment of his assessment. The gist of the decisions is that such clauses are valid and self-executing, and that nonpayment of assessments "suspends" the policy. No payments on the policy can be made for losses occurring during time of suspension. Subsequent payment of assessments cannot relate back to remove the suspension and default, but payment does reinstate the policy from the date of payment. The statute provides that there must be notice prior to cancellation but there is no statutory provision for notice of suspension. No assessment may be levied upon a member for other members' losses occurring while his policy is suspended. *Stutzman v. Cicero Mut. Fire Ins. Co.* (1912), 150 Wis. 254, 136 N. W. 604; *Wright v. Wrightstown-Morrison Farmers Mut. Ins. Co.* (1936), 222 Wis. 462, 269 N. W. 317.

Von Uhl's assessment payment was due on or before July 31, 1963. Thus after August 30th (considering the statutory thirty-day grace period) his policy was in the limbo-like state of "suspension" for default of payment. During this period the company could not pay Von Uhl for any fire or wind losses on his farm. But on October 11, 1963, Von Uhl paid the company $20 in partial payment of the delinquent payment. This $20 was accepted by the company "on account." Had this payment been the full $70.80 due, the policy would have been reinstated so as to cover Von Uhl's loss of April 13, 1964. *Wright v. Wrightstown-Morrison Farmers Mut. Ins. Co., supra.*

It is almost a universal principle that the law does not favor forfeiture in insurance policy cases. While we are dealing here with a statutory standard policy and a statute dealing with the assessments by town mutuals,

the statute should be construed so as not to effect a forfeiture if that can be done without violence to the statute.

The assessment statute under consideration does not contemplate the effect of a partial payment, nor have we found or been furnished with authority that specifically considers the problem.[2]

The assessments provided for in sec. 202.11 (1), Stats., are not only for *pro rata* shares of past loss but are permitted to "include in such assessment an amount not exceeding two mills in anticipation of future losses" and also "at any time for the purpose of carrying on the business of the company including payment of losses, expenses, reinsurance, borrowed money, or the establishment of reserves." The assessments then are not necessarily limited to *pro rata* share payment of past losses. Viewing the statute in this light, failure to pay the entire assessment when due does not have the same righteous impact as failure to pay your share of past losses.

Because the statute does not specifically refer to partial payment of assessments and, further, because of the policy against forfeitures, we deem it proper to look to the conduct of the parties to determine whether the company should be estopped from asserting the policy was suspended at the time of the loss in question.

The company accepted the partial payment of the 1963 assessment without limitation, condition, or notice to Von Uhl that his policy was suspended. Prior to the loss the company made another assessment against Von Uhl. By doing so it must have considered the policy was not suspended because under the *Wright Case, supra* (relied upon by the company as authority for suspension) assessments could not be made against a policy during a period of suspension. The company also accepted with-

---

[2] Both parties have cited *Green v. Minnesota Farmers Mut. Ins. Co.* (1933), 190 Minn. 109, 251 N. W. 14. The statute under consideration therein is substantially different than sec. 202.11 (4), Stats.

out comment the balance of the 1963 assessment after the loss occurred and the subsequent 1964 assessment made during the period of claimed suspension. Nor did the company make claim for the two percent penalty on late payments as provided by the statute. All of these acts on the part of the company are consistent with a waiver of any right to insist upon suspension. Further, by virtue of this conduct, Von Uhl had a right to assume and rely on the assumption that his policy was in force at the time of the loss.

Although the insurance company involved in *Knoebel v. North American Accident Ins. Co.* (1908), 135 Wis. 424, 115 N. W. 1094, was not a town mutual insurance company, the principle approved in that case should be applied to the facts here:

" 'Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.' " (p. 428.)

We therefore hold under the facts of this case where the company accepted a partial payment without notice to the insured that his policy was suspended, and continued to treat the policy as though it was in force until after the loss, it is estopped from asserting a suspension.

*By the Court.*—Judgment affirmed.