CORAL GABLES, INC. *vs.* ANDREW J. GRANARA & others.

Suffolk.    January 3, 4, 1934. — March 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Bills and Notes*, Validity, Ratification by maker. *Agency*, Ratification by principal. *Equity Pleading and Practice*, Increase of ad damnum of writ, Findings by judge, Drawing of inferences, Agreed statement of facts. *Evidence*, Competency. *Novation*. *Contract*, For sale of real estate. *Tender*.

In a suit in equity in the Superior Court upon a promissory note, there was filed an "agreed statement" setting forth certain facts, and containing the following: "The only question for the consideration of this court is one involving the genuineness of" the defendant's signature and his execution of the note; "and it is agreed that if" he "is liable on the note," then certain results were to follow. "It is agreed further that nothing herein shall be construed or intended to prevent either party from offering facts and evidence in addition to these submitted which will directly or by inference enable the court to determine whether . . . [the defendant] is liable on the note." The trial judge heard other evidence. *Held,* that

(1) The true interpretation of the agreed statement was that the trial judge was not confined to the facts recited as agreed; but that, while bound to accept what had been agreed as indisputably true, he was at liberty to hear and pass upon other competent evidence calculated to assist him in deciding whether, in law, the defendant was or was not liable;

(2) There was no error in admitting the additional evidence.

The allowance by a judge of the Superior Court of a motion increasing the *ad damnum* of a writ, by which a suit in equity was begun, after the filing of an appeal by the defendant from a final decree was not in contradiction of G. L. (Ter. Ed.) c. 214, § 19; c. 231, §§ 135, 144.

One, whose name is borne as maker on a promissory note, may render himself liable on the note, in spite of the fact that his name was placed on the note without his authority by some one other than himself, even in circumstances where the signature is a forgery, if, with full knowledge of the facts, he, subsequent to its execution, adopts the signature as his own and ratifies the act originally unauthorized.

The question, whether such an unauthorized signature has been ratified and adopted, is one of fact; and where, in a suit in equity upon such a note against the purported maker, a judge upon an agreed statement of facts and other evidence found that, after full knowledge of the unauthorized signature, the defendant did not communicate to the holder of the note any objection to its validity and executed and

delivered an assignment of his rights under a contract for the purchase of land in connection with which the note was given and covenanted in the assignment that he was lawful owner, had good right to sell and assign and would make further assurances to perfect the assignee's title, a further finding by the judge that the defendant had ratified the signature on the note was not contradictory to his other findings nor clearly wrong, and therefore could not be disturbed upon an appeal from a final decree based thereon where the evidence was not reported.

On the record, a finding by the trial judge in the suit in equity above described, that no novation was shown relieving the defendant of liability, could not be disturbed.

No tender of a deed to the land, the subject of the contract of purchase in connection with which such note was given, was necessary as a prerequisite to the maintenance of the suit on the note by an indorsee who was a holder in due course.

BILL IN EQUITY, filed in the Superior Court with a common law writ of summons and attachment dated April 6, 1931.

Amendments to the bill and to the writ are described in the opinion.

In the Superior Court, there was filed a document entitled "Agreed Statement" which is described in the opinion. The suit was heard by *Whiting,* J., upon such agreed statement and further evidence described in the opinion. He filed a document entitled "Findings of Fact and Order for Decree." There was a further hearing before *J. J. Burns,* J., who filed a like statement. By his order a final decree was entered on July 26, 1933, adjudging that the defendant Granara owed the plaintiff $11,254.50, and directing proceedings for enforcing payment of the debt against property sought to be reached in the suit. The defendant Granara appealed from the final decree on August 11, 1933.

On November 1, 1933, *Williams,* J., allowed a motion to increase the *ad damnum* of the writ from $9,000 to $14,000. The defendant Granara appealed from such allowance.

*John Jackson Walsh,* for the defendants.

*E. J. Flavin, (D. J. Cohen* with him,) for the plaintiff.

WAIT, J. This is a bill in equity seeking to reach and apply a second mortgage alleged to belong to the defendant Granara in payment of a promissory note upon which

Granara is alleged to be liable. The original bill alleged. that Granara executed the note on or about February 4, 1925. By amendment, this was changed to allegations that, on or about February 4, 1925, Granara, by one acting as his agent or representative in the course of his employment and within the scope of his authority, caused the note to be executed; and thereafter, appreciating and recognizing the obligation represented by the note, ratified and adopted it, thereby obligating himself to pay it. The answer to the amended bill denied that Granara executed or authorized the execution of the note, or, after the execution, ratified its execution; and alleged that he was informed and believed the execution by an unauthorized person was a mere formality known to be such by the payee, that the payee and his assigns knew and acted on the knowledge that Granara's name was used without his authority for the benefit of a corporation not empowered to do business until after the making of the note. It alleged, further, that the payee took with knowledge of the circumstances set out. An "agreed statement" was filed which stated as follows: About February 4, 1925, the note referred to in the bill was delivered for valuable consideration to Merrick. It was complete and regular on its face. Three thousand three hundred seventy-five dollars has been paid on the principal, and $642.95 as interest. It was transferred to the plaintiff before maturity for valuable consideration, and, at the filing of the bill, it was held by the plaintiff as a holder in due course. It was given in payment of a balance under a written contract for a deed of real estate at Coral Gables, Florida, in which Merrick, the payee, was vendor and Granara vendee. The plaintiff now holds this contract with a marketable title to the property, ready, willing and able to convey in accord with the agreement. Granara assigned the contract on June 29, 1925. "The only question for the consideration of this court is one involving the genuineness of Andrew J. Granara's signature and/or execution by Granara of the note in suit; and it is agreed that if Granara is liable on the note" then certain things are to follow. "It is agreed further that nothing herein shall be

construed or intended to prevent either party from offering facts and evidence in addition to these submitted which will directly or by inference enable the court to determine whether Granara is liable on the note." Other facts and evidence were offered. There is no merit in the contention that the court was in error in admitting them; that its power was, by the agreement, limited to listening to an offer, a contention that where facts are agreed, the court must confine itself to those stated. The true interpretation of the agreed statement is that the court is not confined to the facts recited as agreed; but, while bound to accept what has been agreed as indisputably true, it is at liberty to hear and pass upon other competent evidence calculated to assist in deciding whether, in law, Granara is or is not liable.

The judge found as further facts: For some time before 1925 Granara and others, residents of Massachusetts, were owners of a voluntary trust called the Equity Realty Trust. They planned to deal in Florida lands through a corporation to be formed in Florida. Three of them, Cooper, Fitts and Walsh, went separately to Florida to negotiate purchases for the new corporation. They obtained a charter for the Florida Boston Company, issued on January 28, 1925. Under the laws of the State, this corporation could not do business until its charter and by-laws were recorded. Record was made on February 27, 1925. In late January and early February they negotiated for purchase of several lots at Coral Gables, taking titles in their several names to be turned over to the new corporation when it was able to do business. Among these was the real estate referred to in the bill. This they decided to deal with in Granara's name. The purchase price was $13,500 on which $500 cash was to be paid down, $2,875 to be paid by a note due on or before March 3, 1925, and the balance $10,125 by a note payable in twelve quarterly instalments of $843.75 each with interest at seven per cent. On February 3, 1925, Granara left at Walsh's office in Boston a check, drawn on January 29, payable to Walsh's order, and on February 4 authorized Walsh to borrow on his Equity Realty Trust

stock to obtain money to be used with the $500 check in the Florida transactions, not for purchase of specific lands for Granara, but for stock to be issued to him by the Florida Boston Company. On February 4, 1925, Walsh paid $500 to the vendor Merrick by his check drawn to order of Granara and indorsed by Walsh who signed Granara's name as indorsee. He signed Granara's name to the $2,875 note, to the $10,125 note, and to a contract for purchase of the land which all bore date February 4, 1925. On March 3 Walsh had the $2,875 note paid through banks, in the name of Granara. Under date of March 13, 1925, Merrick wrote Granara enclosing the cancelled note for $2,875, receipt for the $500 and a copy of the contract. Granara received the letter on March 17, 1925, and, through it, his first knowledge of what had been done with his name. He went at once to Walsh "to find out about it," and was told all about the entire situation. He made no protest or objection. He never communicated to the holder of the note any objection to its validity. He and his wife joined in an assignment of the contract on June 29, 1925, in which he covenanted that he was lawful owner, had good right to sell and assign and would make further assurances to perfect the assignee's title. The assignee agreed to pay the balance due and to perform all covenants of the agreement and to hold Granara harmless against the assignee's failure to perform all conditions of the agreement. Instalments on the note were paid by the Florida Boston Company until it defaulted after the payment due February 4, 1926. Payment was demanded of Granara March 14, 1931. Nothing ever was received by Granara from Merrick or his assigns releasing Granara from liability and agreeing to look to the Florida Boston Company solely for payment. The holder of the note at the time of the assignment of the contract by Granara was sent duplicate copies of that assignment, on which an officer of the then holder indorsed "O.K. H. R. Anderson"; and from June 29, 1925, until March 14, 1931, all demands for payment were sent to the Florida Boston Company with letters which stated that "The Florida Boston Company have assumed an obliga-

tion which we expect to be carried out," and referred to the contract as "Assigned from Andrew J. Granara to the Florida Boston Company" and "Florida Boston Company, Andrew J. Granara contract." The judge found as a fact that the conduct of Granara, after full information relative to the signature on the note and agreement and his assignment of the contract with the statements and covenants on June 29, 1925, was a ratification of the unauthorized acts of Walsh in signing them. He found no estoppel, and no novation which would relieve Granara of liability on the note. No decision of Florida law was called to the judge's attention during the taking of testimony. *Woods-Hoskins-Young Co.* v. *Dittmarr*, 102 Fla. 1000, was so called in argument. The judge ruled that the case is to be decided by the law of Massachusetts. The case is before us upon the defendant Granara's appeals from a decree increasing the *ad damnum* of the writ in which the bill was inserted and a final decree establishing liability of that defendant and prescribing steps for reaching and applying property in payment.

We find no error in the decree increasing the *ad damnum* of the writ. It is provided by G. L. (Ter. Ed.) c. 214, § 19, that when an appeal from a final decree of the Superior Court has been entered in the Supreme Judicial Court "all proceedings under such decree shall be stayed, and the cause shall thereupon be pending before the full court"; but, as was stated in the analogous case of an appeal from a decree of a single justice of the Supreme Judicial Court, in *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 221: "This statute . . . does not prevent the entering by a single justice of decrees respecting interlocutory matters which may call for a speedy hearing and decision, but in no wise affecting the questions covered by the final decree." St. 1931, c. 219, now embodied in G. L. (Ter. Ed.) c. 231, § 135, added to G. L. c. 231, § 135, "The entry of the case shall not, except as otherwise provided by law, transfer the case, but only the question to be determined." By G. L. c. 231, § 144, section 135 is applicable to equity. The dealing with the *ad damnum* was not a

proceeding under the decree appealed from; and had no immediate relation to any question to be decided on the appeal. It did not contravene the injunction of the statute first quoted.

It is settled law of Massachusetts that the person whose name is borne as maker on a promissory note may render himself liable on the note, in spite of the fact that the name was placed there without authority by some one other than himself, even in circumstances where the signature is a forgery, if, with full knowledge of the facts, he, subsequent to the execution, adopts the signature as his own and ratifies the action originally unauthorized. *Greenfield Bank* v. *Crafts*, 4 Allen, 447, 455. *Bartlett* v. *Tucker*, 104 Mass. 336. *Wellington* v. *Jackson*, 121 Mass. 157. *Central National Bank* v. *Copp*, 184 Mass. 328. This may be oral although the instrument bears a seal. *McIntyre* v. *Park*, 11 Gray, 102. *Gross* v. *Cohen*, 236 Mass. 468. Whether there has been such adoption and ratification is matter of fact. The judge here has found the fact. The evidence is not reported. We cannot go behind his finding unless clearly wrong or contradicted by other findings. The facts found do not contradict his finding. The reported facts amply sustain the finding. We cannot properly say it is wrong.

If we assume, without deciding, that the law of Florida as laid down in *Woods-Hoskins-Young Co.* v. *Dittmarr*, 102 Fla. 1000, was before the trial judge for consideration, we find no error in his decision to follow the law of Massachusetts. That case was an action of contract. It did not arise on a promissory note like the case before us. The rule requiring tender of a deed before suit, however applicable there, is not applicable in an action on a note. That decision does not show any rule to exist in Florida different from the rule in Massachusetts; nor does it show any rule of Florida law applicable to the case before us.

Nor was the judge wrong in drawing inferences where acting upon a case stated. Since St. 1913, c. 716, § 5, the court may draw inferences "unless the parties expressly agree that no inferences shall be drawn." The earlier

cases cited by the defendant no longer state the law here controlling.

There is no error in the finding that no novation took place. Acceptance of a new liability in place of an old one and a release of the old are essential to novation. *Slotnick* v. *Smith*, 252 Mass. 303, 306. Although a strong argument for the existence of a novation can be, and has been, founded on the facts reported, we, who have not seen the witnesses and do not have all the evidence before us, are not in position to overturn the finding. We see nothing amounting to a release of Granara in what the holders of the note have done as disclosed by the record. No tender of a deed was necessary to entitle the holder in due course of a note given upon a contract for a deed to proceed upon the note after nonpayment. The note admittedly was due and unpaid.

The entry must be

*Decrees affirmed, with costs.*