GUSCHL, Respondent, vs. SCHMIDT and wife, Appellants.

*March 3—April 6, 1954.*

412

414

For the appellants there was a brief by *Anderson & Murphy,* attorneys, and *J. Stewart Murphy* of counsel, all of Milwaukee, and oral argument by *J. Stewart Murphy.*

For the respondent there was a brief by *Erbstoeszer, Cleary & Decker* of Milwaukee, and oral argument by *Vernon Erbstoeszer.*

CURRIE, J.   Counsel for the defendant owners contend on this appeal that under finding of fact No. 23 contained in the

so-called "supplemental" findings of fact the defendant owners are entitled to judgment against the plaintiff contractor on their counterclaim for the entire $5,600 paid by them on the contract price. Said finding is to the effect that the house as remodeled is of less value than prior to the remodeling.

It is at once apparent, in comparing finding No. 23 of the "supplemental" findings of fact with the trial court's memorandum decision, that such finding is in sharp conflict with the memorandum decision. Such finding of fact is against the great weight and clear preponderance of the testimony given at the trial, and therefore cannot stand.

The defendant owners attempted to prove their damages on their counterclaim by the testimony of two realtors, Russell and Wilbert. Russell testified that if the house had been remodeled according to the plans drawn by the Architect Berres, such house would sell for $12,900 to $13,500, while in its present condition the house is worth $10,000 "tops." Wilbert testified that the value of the house as remodeled is from $2,500 to $3,000 less than the house shown on the plans. Both Russell and Wilbert stated that the principal reason they found the house to be now worth substantially less than it would have been, if it had been remodeled strictly according to the plans, was because of the cutting down of the size of the kitchen and second bedroom. They especially emphasized the fact that the smaller bedroom was too small to be used as a bedroom so that the house in reality was a one-bedroom home instead of a two-bedroom one. The cutting down of the size of the kitchen, and the smaller of the two bedrooms opposite the kitchen, was due to the previously mentioned mistake in making the measurements made preliminary to drawing the plans. The shortage was in the original house as the additions at either end had been

constructed of the exact size specified in the plans. The plaintiff contractor had taken such two-foot shortage principally off from the kitchen and the smaller of the two bedrooms. The plans called for this bedroom to be eleven feet six inches in length by seven feet in width. (Significantly the plans did not label such room a bedroom but a "lounging room.") As a result of reducing the size of such room the same is now L-shaped, the over-all length still being eleven feet six inches, but it is only seven feet wide for a distance of five feet three inches and for the remaining six feet three inches of its length it is but five feet eleven inches wide.

The defendant owners paid to the plaintiff contractor the last $2,100 of the $5,600 paid by them on the contract after the partition walls of both the kitchen and the smaller bedroom had been erected and lathed. Furthermore, the owners were living on the premises during all the time the remodeling was being done and therefore observed the work performed from day to day. Regardless of whether the Architect Berres was the agent of the owners or the contractor, and irrespective of who was responsible for the two-foot mistake in measuring the length of the original house, the payment by the owners of the $2,100 after the partition walls had been erected must be deemed to have constituted a waiver by the owners of any claim for damages due to the said rooms being smaller than shown on the plans. While a partial or total payment on a building contract does not constitute an acceptance of the work in so far as latent defects are concerned, such a payment by the owner with knowledge of a particular defect does constitute a waiver of such defect in the absence of any other circumstances mitigating against such a waiver. *Keller v. Oberreich* (1886), 67 Wis. 282, 30 N. W. 524; *Bannister v. Patty's Executors* (1874), 35 Wis. 215; *Bailey v. Jones* (1928), 243 Mich. 159, 219 N. W.

629; *Tonawanda v. Stapell, Mumm & Beals Corp.* (1934), 240 App. Div. 472, 270 N. Y. Supp. 377; 9 Am. Jur., Building and Construction Contracts, p. 41, sec. 54; 17 C. J. S., Contracts, p. 1104, sec. 514 (3).

There were defects in workmanship in plaintiff contractor's performance of the contract as to which there was no waiver thereof by the defendant owners. As to such defects the defendants were entitled to damages either as a setoff against the contractor's cause of action or upon their counterclaim. However, inasmuch as the damages testified to by defendant owners' experts Russell and Wilbert were largely based on the cutting down of the size of the kitchen and the smaller bedroom, their testimony affords no basis for computing the owners' damages for the defective workmanship. In fact, there is no evidence in the record which attempts to establish the amount of damages due the defendant owners solely for the defects in workmanship. The defendant owners therefore are in no position on this appeal to establish that such damages for defective workmanship exceeded the approximate sum of $600 which the court allowed therefor by dismissing the plaintiff contractor's cause of action in which he sought to recover the unpaid balance on the contract.

We consider that some reference should be made in this opinion to the unfortunate conflict between certain of the "supplemental" findings of fact with the trial court's memorandum decision and the first set of findings. As mentioned in the statement of facts preceding this opinion, the record is silent as to any explanation for such conflict, except that the original findings were drafted by the attorneys for plaintiff, while the supplemental findings were drafted by opposing counsel. We surmise that this conflict resulted from failure of the able trial judge to read completely through all of the findings of fact in the draft submitted by defendants' counsel

before signing the same as supplemental findings. We cannot conceive of him so signing such second set of findings if his attention had been called to findings Nos. 23 and 25. The statement contained in finding No. 25, to the effect that the reason for the trial court disallowing any damages on the counterclaim was due to the fact that the defendants had asked for an excessive amount is not substantiated by, or in accord with, the trial court's memorandum decision.

*By the Court.*—Judgment affirmed.