IN MATTER OF ESTATE OF ALEXANDER, Deceased: M & I BANK, and another, Appellants, v. FIRST AMERICAN NATIONAL BANK, Respondent.

*No. 75–81. Argued November 29, 1976.—Decided January 6, 1977.*
(Also reported in 248 N. W. 2d 475.)

169

171

For the appellants there were briefs by *F. William Haberman* and *Michael, Best & Friedrick; William A. Stearns, Robert L. Titley* and *Quarles & Brady,* and oral argument by *Mr. Stearns,* all of Milwaukee.

For the respondent there was a brief by *Richard P. Tinkham, John E. Bliss* and *Tinkham, Smith, Bliss, Patterson & Richards,* and oral argument by *Richard P. Tinkham,* all of Wausau.

HANLEY, J. Five issues are presented on appeal:

1. Are certain of the findings of fact and conclusions of law entitled to no weight upon this appeal because

they are inconsistent with the trial court's memorandum opinion?

2. Did the deceased ratify her signature upon the March 2 guaranty by entering the September 7 agreement?

3. Did the deceased waive the right to assert the defense of forgery against the March 2 guaranty?

4. Is the estate estopped from asserting the defense of forgery against the March 2 guaranty?

5. Is the bank's claim allowable on the basis of the September 7 agreement itself?

*Findings of Fact*

The estate contends the findings of fact and conclusions of law prepared by counsel for the bank and signed and filed by the trial judge are inconsistent with the trial judge's opinion and therefore entitled to no weight. The estate specifically objects to the findings numbered 9 and 11, which state Ruth Alexander ratified the March 2 guaranty and waived any objection to its validity. Counsel for the estate also argue that the findings and conclusions were submitted to the trial court and signed without prior submission or notice to the estate.

This latter contention is somewhat disputed by the bank, but it is not a matter of record, and therefore is not considered. The estate could have caused facts relative to the prior submission of findings and conclusions to be in the record by objecting to the findings and conclusions even after they were signed but before judgment was entered. The estate, however, chose not to do so.

The bank concedes that the trial court's opinion makes no mention of either ratification or waiver, but argues that if the opinion is considered in its entirety, no inconsistency with these findings may be found. The bank further contends that the failure before this appeal to

object to the findings of fact and conclusions of law prevents the estate from now making such objection.

As a basis for its contention that the findings of fact and opinion are not inconsistent, the bank relies upon the statement in the opinion that "[t]he agreement of September 7, 1973 estops the estate from raising this [forgery] defense because of the total and complete knowledge of the facts and funds owed by Leroy Tonn, the Merritt Lease Corporation and Lakeside Industries, Inc." This use of the word "estops" and the trial court's emphasis on knowledge of those managing the estate, the bank contends, indicates the trial court found ratification and waiver. This contention, however, ignores the recognized distinctions between the doctrines of ratification, waiver and estoppel.

Ratification is the manifestation of intent to become party to a transaction purportedly done on the ratifier's account. *Restatement (Second) of Agency* sec. 82, at 210 (1957). Waiver is the voluntary and intentional relinquishment of a known right, while estoppel is action or nonaction of a person which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. *Von Uhl v. Trempealeau County Mutual Insurance Co.*, 33 Wis.2d 32, 37, 146 N.W.2d 516, 519 (1966). Although it is said the distinction between waiver and estoppel is difficult to demonstrate and the terms are often used interchangeably, this is because some of the same facts may affect both doctrines, not because the distinction does not exist. In cases involving claims of both waiver and estoppel, this court has recognized the distinction by considering the claims individually. *Variance, Inc. v. Losinske,* 71 Wis.2d 31, 237 N.W.2d 22 (1976) ; *Hanz Trucking, Inc. v. Harris Brothers Co.*, 29 Wis.2d 254, 138 N.W.2d 238 (1965). Thus, although in this case conceivably all of these principles

could operate, the trial judge's opinion must be understood to mean what it says. Because of the distinction between these three doctrines, the trial judge's opinion, only finding estoppel, should not be interpreted to include waiver and ratification. The findings of fact are thus inconsistent with the opinion.

■ Even a sharp conflict between the findings of fact and a memorandum decision, however, does not automatically destroy the weight of the particular findings of fact. When the trial judge signs findings of fact and conclusions of law they become the findings and conclusions of the trial court, and the responsibility for their correctness is his. *Karp v. Coolview of Wisconsin, Inc.*, 25 Wis.2d 299, 301, 130 N.W.2d 790, 791 (1964). This court has also held that the findings and conclusions take precedence over a memorandum decision. *Gordon v. Gordon*, 270 Wis. 332, 348, 71 N.W.2d 386, 394 (1955).

■ Although incomplete findings may be supplemented by the written decision of the trial court, *Breeden v. Breeden*, 6 Wis.2d 149, 150–51, 93 N.W.2d 854, 855 (1959), findings, signed by the trial judge, which include more than the opinion are nevertheless the findings of the court. Thus, in *Guschl v. Schmidt*, 266 Wis. 410, 63 N.W.2d 759 (1954), this court, considering a finding of fact which was in sharp conflict with the trial judge's memorandum decision, did not strike down the finding because of inconsistency, but upon a determination that the finding was against the great weight and clear preponderance of the evidence. *Id.* at 416, 63 N.W.2d at 762. This great weight and clear preponderance of the evidence test is the general test upon appeal for the sufficiency of findings of fact, *Merten v. National Manufacturers Bank of Neenah*, 26 Wis.2d 181, 186, 131 N.W.2d 868, 870 (1965), and is applicable in this case despite the inconsistency.

*Ratification*

The most pertinent issue in this case is whether Ruth Alexander, by entering into the September 7 agreement, ratified the March 2 guaranty. The trial court found that she did ratify the guaranty, but the estate contends that the September 7 agreement was a completely separate contract which did not include ratification of the guaranty.

Whether a person may ratify a forged signature is a perplexing problem. There has been a split of authority on the issue of ratification of an unauthorized signing which constitutes the crime of forgery. In several states the rule of law, although represented by very early cases, is that there may be no ratification of a forgery, in the absence of estoppel or a new consideration. *Hartlep v. Murphy,* 197 Ind. 222, 227, 150 N.E. 312, 314 (1926); *Wilson v. Hayes,* 40 Minn. 531, 538–40, 42 N.W. 467, 470 (1889); *Fourth & Central Trust Co. of Cincinnati v. Johnson,* 24 Ohio App. 129, 156 N.W. 463 (1927); *Funds for Business Growth, Inc. v. Woodland Marble and Tile Co.,* 443 Pa. 281, 286, 278 A.2d 922, 925 (1971).

Other states have, however, allowed ratification of forged documents, and the trend, if any, in this area is toward this allowance. *See Common Wealth Insurance Systems, Inc. v. Kersten,* 40 Cal. App.3d 1014, 115 Cal. Rptr. 653 (1974); *Coral Gables, Inc. v. Granara,* 285 Mass. 565, 189 N.E. 604 (1934); *Magrid v. Drexel National Bank,* 330 Ill. App. 486, 71 N.E.2d 898 (1947). These states recognize that one whose name has been forged to a document may have good reasons for electing to be bound by the agreement, and therefore should be able to do so. *See* Mechen, *Outlines of Agency* sec. 225 at 149 (1952).

The comments to the *Restatement (Second) of Agency* indicate that a forged signature may be ratified. Following section 85, subsection (1) of which states the require-

ment for ratification that the actor have purported to be acting for the ratifier, the comments state:

"In accord with the rule stated in this Subsection, there can be no ratification of a contract which one intends for another, even though he believes that he is authorized to make it on behalf of the other, unless the intent is manifested. However, if one impersonates another, thereby purporting to act as another, or executes or delivers an instrument purportedly signed by another, the rationale of ratification is applicable and the act or transaction can be ratified by affirmance if it does not constitute an illegal agreement." *Restatement (Second) of Agency* sec. 85, comment *b,* at 218 (1957).

The Uniform Commercial Code expressly permits the ratification of forged signatures upon negotiable instruments. Sec. 403.404(2), Stats.

In *Murphy v. Estate of Skinner,* 160 Wis. 554, 152 N.W. 172 (1915), this court considered the question of ratification of a forged signature. In that case Murphy argued that the deceased had ratified his forged signature on a promissory note payable to Murphy by failing to assert the forgery at the time the note was presented for payment. Skinner, the deceased, had merely refused to pay the note. Although it found that no ratification had occurred, the court considered the merits of Murphy's claim, thus adopting the view that a forged signature may be ratified.

Even among those authorities which allow ratification of forgeries, however, there remains concern over sanctioning this criminal act. Professor Seavey in his treatise *The Law of Agency,* sec. 33D at 60 (1964): "It is now generally recognized that one whose name has been forged can ratify, unless he had agreed to take no proceedings against the forger, an agreement which would make the transaction illegal because of its tendency to prevent prosecution for the crime." The comment to the *Restatement (Second) of Agency* quoted above also in-

cludes the qualification: "In no event, however, is a ratification effective in favor of one who obtained it by promising not to prosecute the forger." Sec. 403.404(2), Stats., of the Uniform Commercial Code specifies that any ratification under that section may not affect any rights of the person ratifying against the actual signer.

Here, under the September 7 agreement, the bank agreed to dismiss its attachment action against Tonn. Under no provision did Ruth Alexander agree not to prosecute Tonn. The agreement contained no promises by the parties that they would not take part in any criminal proceedings against Tonn. We think that this contract is not illegal or of a nature that it will stifle any possible criminal prosecution stemming from the alleged forgery.

The September 7 agreement only served to terminate the civil action of the bank against Tonn. Such is exactly the result which occurs upon ratification of a forged signature upon a negotiable instrument under sec. 403.404, Stats. Ratification of a forged negotiable instrument under this section relieves the signer from liability on the instrument, but does not relieve him from liability to the person whose name is forged, and does not relieve him of criminal liability. 2 Anderson, *Uniform Commercial Code* sec. 3–404:6, at 923 (1971). We see no reason why this rule for negotiable instruments should not apply to forgery of non-negotiable instruments, and therefore in this case the September 7 agreement does not preclude ratification of the allegedly forged guarantee because it relieved Tonn of liability to the bank.

■ Having determined that one may ratify his forged signature, and that the contract which, respondent claims, constitutes such ratification does not preclude ratification by illegally stifling criminal prosecution, the question to be answered is whether the deceased actually did ratify her signature on the March 2 guaranty by entering the September 7 agreement.

■ The essence of ratification is a definitive manifestation of intent to become a party to the transaction done or purported to be on his account. *Restatement (Second) of Agency* sec. 93 at 240 (1957); Seavey, *The Law of Agency* sec. 37A, at 67 (1964). Thus, if by the September 7 agreement Ruth Alexander ratified her forged signature upon the March 2 guaranty, her intent to do so must be evidenced. The best indicator of the intent of the parties is the language of the contract itself. *North Gate Corp. v. National Food Stores, Inc.*, 30 Wis.2d 317, 323, 140 N.W.2d 744 (1966).

Examination of the September agreement convinces this court that, although Ruth Alexander intended to guarantee to the bank the debts of Tonn, she did not intend to ratify the forged signature upon the March 2 guaranty. Nowhere in the September 7 agreement is reference made to the March 2 guaranty. The words "ratify" or "affirm" are never used in the agreement. If the deceased had wished to ratify the March 2 guaranty the agreement would so state. Instead of a ratification of the March 2 guaranty, the September 7 agreement is a completely separate contract by which Ruth Alexander, and also Anne Alexander, agreed to guarantee the various debts to the bank of Tonn, Merritt Lease Corporation and Lakeside Industries, Inc.

The bank points to paragraph III of the September 7 agreement, which states the intent of the parties in entering the agreement, and claims that this intent may only be achieved by finding ratification of the forged guaranty. This contention is not correct, because the intent of the parties is fully served by the guaranty within the September 7 agreement itself.

■ This court has stated the language of a contract must be understood to mean what it clearly expresses, and the courts may not depart from the plain meaning of a contract when it is free from ambiguities. *Bousfield v. Hardware Dealers Mutual Fire Insurance Co.*, 24

Wis.2d 10, 14, 127 N.W.2d 765, 768 (1964). As to the question of ratification of the March 2 guaranty, the September 7 agreement contains no ambiguity, for there is absolutely no reference to that guaranty.

Furthermore, there may be no ratification after the other party has manifested his withdrawal from the transaction as the bank did here. *Restatement (Second) of Agency* sec. 88, at 226 (1957). Conduct which manifests that the other party no longer consents to the transaction constitutes a withdrawal, and the commencement of action against the agent for misrepresentation of authority is such manifestation. *Restatement (Second) of Agency* sec. 88, *Comment* a, illustration 4, at 227 (1957). In the instant case, the bank, upon the discovery that the signature upon the March 2 guaranty was not bona fide, immediately cut off Merritt Lease's line of credit, and shortly thereafter commenced an attachment action against Tonn, alleging, among other things, that Tonn had forged Ruth Alexander's signature on the guaranty. This conduct constitutes a withdrawal from the entire transaction. There may be no ratification after such withdrawal.

Thus, the finding and conclusion by the trial court that Ruth Alexander ratified her signature on the March 2 guaranty is against the great weight and clear preponderance of the evidence and may not stand.

*Waiver*

The bank contends Ruth Alexander waived the right to assert the invalidity of the March 2 guaranty by agreeing to the terms of the September 7 agreement. We believe the record does not support this contention.

Intention to relinquish the right is an essential element of waiver. *Hanz Trucking, Inc. v. Harris Brothers Co.*, 29 Wis.2d 254, 264–65, 138 N.W.2d 238, 244 (1965). The intention of the September 7 agreement, as

previously referred to, includes nothing in relation to the right to assert the invalidity of the March 2 guaranty. Furthermore, contrary to the bank's contention, it is not necessary that a waiver be found in order to effectuate the intent of this agreement, for the September 7 agreement itself constitutes a guaranty of the debts in question.

*Equitable Estoppel*

 The record in this case cannot support a finding of equitable estoppel. The elements of equitable estoppel were stated by this court in *Gabriel v. Gabriel*, 57 Wis.2d 424, 204 N.W.2d 494 (1973), as follows:

"'The tests for applicability of equitable estoppel as a defense derive from the definition by this court of such estoppel to be: '. . . action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. . . .' Three facts or factors must be present: (1) *Action or nonaction* which induces (2) *reliance* by another (3) to his *detriment.*" (footnotes omitted). *Id.* at 429, 204 N.W.2d at 497.

Furthermore, the proof of estoppel must be clear and convincing, and may not rest upon conjecture. *Id.* at 428, 204 N.W.2d at 497.

 In this case the bank contends that the participation of the deceased in the September 7 agreement induced it to rely upon the validity of the March 2 guaranty to its detriment. The bank's contention fails in two respects. First, it is an accepted rule of law that a party's reliance must be justifiable or reasonable. *Chicago & North Western Transportation Co. v. Thoreson Food Products, Inc.*, 71 Wis.2d 143, 154, 238 N.W.2d 69, 75 (1976). The bank's claim cannot be considered justifiable in light of the fact the September 7 agreement

constituted a new, separate and valid guaranty of the debts of Tonn and Merritt Lease upon which the bank could rely. Furthermore, there is no intimation in the September 7 agreement that the defense of forgery would not be asserted. It is unreasonable to claim reliance upon a document known to be without a valid signature where there exists a valid document containing essentially the same terms.

Second, any reliance upon the forged March 2 guaranty could not have been detrimental to the bank, for the September 7 agreement makes Ruth Alexander guarantor of the debts in question and provided adequate protection to the bank. Whatever detriment there may be would not result from the failure of estoppel to intervene, but from the bank's failure to base its claim upon the valid guaranty.

### Claim Based Upon September 7 Agreement

The final question is whether the bank's claim may be allowed on the basis of the September 7 agreement. Although the trial court found the claim allowable upon the March 2 guaranty through estoppel, ratification or waiver, the trial court's memorandum opinion appears to rely also upon the terms of the September 7 agreement itself to validate the claim. It must be noted, however, that the conclusions of law signed by the trial court do not base the allowance of the claim upon the September 7 agreement.

The first contention of the estate against the allowance of the claim upon the September 7 agreement is that the bank did not attach that document to its claim when filed. Sec. 859.13(2), Stats., provides that "[i]f a claim is founded upon a written instrument which is available, the original or a copy thereof with all endorsements must be attached to the claim." We think, however, that this statutory provision is properly construed

as directory and not mandatory, and therefore the failure to attach the written instrument is not fatal, rendering the proceeding void.

In *State ex rel. Werlein v. Elamore,* 33 Wis.2d 288, 293, 147 N.W.2d 252, 254–55 (1967), this court stated:

"In determining whether a statutory provision is mandatory or directory in character, we have previously said that a number of factors must be examined. These include the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations, and whether a penalty is imposed for its violation. *Marathon County v. Eau Claire County* (1958), 3 Wis. (2d) 662, 666, 89 N.W. (2d) 271; *Worachek v. Stephenson Town School Dist.* (1955), 270 Wis. 116, 70 N.W. (2d) 657. We have also stated that directory statutes are those having requirements 'which are not of the substance of things provided for.' *Manninen v. Liss* (1953), 265 Wis. 355, 357, 61 N.W. (2d) 336.

"In 2 Sutherland, Statutory Construction (3d ed.), p. 216, sec. 2802, the author observes that provisions are normally considered directory 'which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey no prejudice will occur to those whose rights are protected by the statute.' The text further (p. 217, sec. 2804) states that a provision is interpreted as directory where the 'manner of performing the action directed by the statute is not essential to the purpose of the statute.'"

Applying these standards to the requirement that any written instrument, upon which a claim is based, be attached to the claim, it is to be noted that probate practice has long been held to be intended to permit summary action as informally as possible. *Estate of Beyer,* 185 Wis. 23, 27, 200 N.W. 772, 773 (1924). The primary purpose of the rules regarding the form of claims is to apprise the administrator and heirs of the deceased of the nature and the amount of the claim. *Estate of Baum-*

*garten,* 12 Wis.2d 212, 221, 107 N.W.2d 169, 175 (1961) ; *Estate of Rule,* 3 Wis.2d 301, 304, 88 N.W.2d 734, 736 (1958). The probate law allows for great liberality in the amendment of claims, 2 MacDonald, *Wisconsin Probate Law* sec. 9.90, at 36 (7th ed. 1973) ; *Estate of Rule, supra,* and the statutes further provide for the court to require issues to be made more definite and to direct that formal pleadings be exchanged. Sec. 859.33 (2), Stats.

Thus, we conclude, sec. 859.13 (2) is directory, for if the estate is apprised of the nature and amount of the claim, and amendment of the claim by submission of the particular instrument may properly be made, this section is one which is given with the view to the orderly and prompt conduct of the business, and by failure to attach the instrument when the claim is filed no prejudice will occur to those claimed against. The failure to attach the September 7 agreement to the claim in this case, therefore, is not in and of itself fatal to the bank's claim.

In order to find that the claim here is allowable based upon the September 7 agreement, the court must find that the claim was properly amended to be based upon that agreement and also that the liability of the estate upon the claim was proven. Here the estate's liability under the September 7 agreement is not proven. This agreement was not considered by the trial court other than for the purpose of determining the estoppel, ratification and waiver issues. As the estate points out, the September 7 agreement contains terms which appear to be those of a guaranty of collection as opposed to a guaranty of payment. If this agreement is indeed a guaranty of collection then it would be necessary for the bank to show it had exhausted other collection efforts against the debtor. No meaningful proof exists in the record as to these efforts by the bank. Thus, at least upon this record, a claim based upon the September 7 agreement may not be allowed.

The estate objected to the admission of the September 7 agreement into evidence, claiming it constituted an improper amendment of the claim after the time for filing had expired. The trial court disagreed upon the ground that the admission of the agreement was not an amendment, but merely evidence to support the claim as filed. This holding of the trial court is, of course, consistent with its decision finding ratification, waiver or estoppel. Having determined those three conclusions of the trial court to be without merit, the question remains whether the claim could be properly amended to be based upon the September 7 agreement.

The general rule for amendment of claims is that amendment is to be liberally permitted, but not after the expiration of the time for filing claims so as to increase the amount or materially change the nature of or basis for the claim. 2 MacDonald *Wisconsin Probate Law*, sec. 9.90 at 36 (7th ed. 1973) ; *Estate of Rule, supra* at 303, 88 N.W.2d at 736.

The previous application of this rule by this court is well illustrated by the cases of *Estate of Mayer*, 253 Wis. 32, 33 N.W.2d 213 (1948), and *Klukas v. Linderman*, 172 Wis. 388, 179 N.W. 511 (1920).

In *Klukas* the plaintiff filed a claim to recover money he allegedly loaned to the deceased. The original claim filed in the county court stated the loan was evidenced by a promissory note. The county court allowed the claim in full, but appeal to the circuit court was made by the administrator, Linderman. At the circuit court the claimant was allowed to amend his claim by alleging the facts of the loan in a separate count without reference to the promissory note. The circuit court concluded that the signature upon the note was not the genuine signature of the deceased, and he had not authorized such signature. The circuit court further found the facts of the loan alleged by the claimant to be unproven and untrue.

Thus, the claim was disallowed. This court, upon appeal, affirmed the circuit court judgment and also found the amendment of the claim to be proper stating:

"We discover no error in so amending the claim. This, however, did not operate to so amend the claim as to effect a withdrawal of the claim filed and thus completely substitute another claim for the one originally filed in county court. If plaintiff failed to establish that the writing as alleged was given by the decedent as evidencing the loan, he would not be barred from recovering on his claim the amount of a loan if it is legally established by other evidence than the writing." 172 Wis. at 390, 179 N.W. at 512.

In *Estate of Mayer* the claimant filed a claim against the estate upon three promissory notes. After the time for filing had expired the claimant moved to amend the claim by substituting a fourth note for one of the first three. Apparently the note for which substitution was sought had been lost. The trial court refused to allow this amendment, and this court, upon appeal, affirmed. The court stated:

"The trial court was correctly of the opinion that the proposed amendment, if allowed, would materially alter the claim as filed. The dates of the notes are different. The amounts are different, and even the interest rate is different. The original claim was based upon a certain promise to pay and the note to be introduced by amendment was based upon a different promise to pay a different amount at different times." 253 Wis. at 33, 33 N.W.2d at 214.

Although the parties in the instant case respectively argue that the facts here are either just like those in *Klukas* or *Estate of Mayer,* we find this case to have similarities to both of those cases. Amendment of the claim here would technically change its basis from the March 2 guaranty to the September 7 agreement. On the other hand, the claim is for the guaranty of the same

notes, and the original claim, with the March 2 guaranty attached, had some basis upon the September 7 agreement, although on the erroneous grounds of estoppel, ratification or waiver. Furthermore, the two instruments in this case, although distinct individually, represent closely related transactions which combined in the same situation of circumstances. The September 7 agreement was entered into as a direct result of the March 2 guaranty.

In addition, a factor we think significant is the total knowledge of the estate as to the true nature of the claim, even as originally filed. One of the co-special administrators of the estate, an appellant here, Stanley F. Staples, Jr., intimately participated in all the transactions culminating in the September 7 agreement. He took part in drafting that agreement and witnessed its execution. There can be no doubt that when the claim here was filed, only about seven months after the September 7 agreement was entered into, to obtain payment of the notes of Merritt Lease, the estate understood completely the nature and basis for this claim.

Thus, due to the knowledge of the estate regarding the claim, the factual relationship of the instruments in question, and the policy of liberality in the amendment of claims, we hold that this claim may be amended to be based upon the September 7 agreement without any prejudice to the estate.

As previously stated, a valid claim based upon the September 7 agreement has not been proven. This resulted from the failure of the parties and the trial court to consider liability under that agreement alone. Therefore the real controversy in this case was not fully tried. When this happens, this court may reverse and remand the case to the trial court for a new trial pursuant to sec. 251.09, Stats. *Merco Distributing Corp. v. O & R Engines, Inc.*, 71 Wis.2d 792, 797, 239 N.W.2d 97,

100 (1976). Upon remand, formal amendment of the claim should be permitted.

*By the Court.*—Reverse and remand for further proceedings not inconsistent with this opinion.

DAY, J., took no part.