# IN RE the PATERNITY OF D.L.H.: L.H., Petitioner-Respondent,†

## v.

## D.H., Respondent-Appellant,

## G.B., Respondent.

### Court of Appeals

*No. 87–0349. Submitted on briefs October 20, 1987.—Decided December 16, 1987.*

(Also reported in 419 N.W.2d 283.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

---

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jones and Feldner,* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Staks & Diel, S.C.,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. L.H. (the mother) brought this action to determine the paternity of D.L.H., a child born during the mother's marriage to D.H. (the husband). Court-ordered blood tests unequivocally excluded the husband and he was dismissed from the action. The husband appeals contending that: (1) the

trial court erred in concluding that dismissal of the action was not in the best interest of the child pursuant to sec. 767.46(2), Stats.; and (2) the trial court erred in refusing to dismiss the action on the grounds of equitable estoppel.

We conclude that sec. 767.46, Stats., does not allow a trial court to dismiss a paternity action without the consent of all parties. Therefore, the trial court's order refusing to dismiss this action under this statute was proper. We also conclude that the court's equitable estoppel analysis was incomplete. Since equitable estoppel may apply under the facts of this case, we reverse the court's estoppel ruling and remand for a determination of: (1) whether the elements of equitable estoppel are proven; and (2) if so, whether the application of equitable estoppel is in the child's best interests.

This paternity case presents an unusual, yet relatively uncomplicated, factual scenario. Instead of an alleged father wanting to avoid the proceedings, this case involves a husband who has been excluded by blood tests, but who nonetheless seeks to avoid a judicial determination that another man is in fact the father of the child, or who seeks, in the alternative, to participate in the paternity action.

The mother became pregnant, realized her husband was not the father, and scheduled an abortion. She later decided to cancel the abortion, possibly relying on her husband's promise to raise the child on his own. Following the birth of D.L.H., the husband did indeed treat the child as his, knowing that it was not. It is alleged that, as a result, he became what some jurisdictions refer to as an "equitable parent."[1]

[1]*See, e.g., Atkinson v. Atkinson,* 408 N.W.2d 516, 519 (Mich. Ct. App. 1987).

The mother filed a petition to determine the paternity of D.L.H. and several months later petitioned for a divorce. In the divorce action, the mother alleged that D.L.H. was a child of the marriage, obtained temporary custody of D.L.H., and requested and received a family support order directing the husband to pay $900 per month.

The HLA blood tests excluded the husband as a possible father. Another respondent, G.B., was included with higher than 99% probability of paternity.[2]

Based on the blood tests, the husband was dismissed from the case by the court commissioner but reinstated after a motion for reconsideration.[3] The husband then requested the trial court to dismiss this action on the grounds of equitable estoppel. The court denied the motion.

The mother then requested that the husband be dismissed from the paternity action based upon the blood test results. The court concluded that the husband's dismissal was mandatory under sec. 767.48(4), Stats., despite the court's statement that "it may well be that the best interest of D.L.H. would be served by honoring [the husband's] request" to remain in the lawsuit. The husband appeals.

### DISMISSAL PURSUANT TO SEC. 767.46(2), STATS.

Although this appeal is taken from the order of the trial court which dismissed the husband from the paternity action, it is primarily the denial of the

---

[2]G.B. has filed an affidavit indicating no interest in establishing a significant relationship with D.L.H.

[3]All subsequent proceedings were before a circuit court judge.

husband's motion to dismiss the entire action which is being challenged.[4] A denial of a motion to dismiss is generally not a final appealable order, *see Bohlman v. Mutual Indem. Co.,* 42 Wis. 2d 454, 456, 167 N.W.2d 196, 197 (1969); however, sec. 809.10(4), Stats., provides that all prior nonfinal orders adverse to the appellant are properly brought before this court by an appeal from a final order. Thus, contrary to the mother's assertion that only the husband's dismissal is at issue, the trial court's order refusing to dismiss the action *in toto* is properly before us.

The husband claims error in the failure of the court to dismiss the paternity proceeding as being in the best interests of the child. He argues that sec. 767.46(2), Stats., gives the trial court the authority to do so. We disagree.

Section 767.46, Stats., sets forth the procedure for pretrial hearings in paternity cases. The husband stresses the language of subsec. (2). However, we consider it necessary to construe this section as a whole. *See In re Paternity of J.S.C.,* 135 Wis. 2d 280, 287, 400 N.W.2d 48, 52 (Ct. App. 1986). Section 767.46 provides:

> (1) A pretrial hearing shall be held before the court or family court commissioner. A record of the proceeding shall be kept, in accordance with s. 757.55(2). At the pretrial hearing the parties may present and cross-examine witnesses, request blood tests and present other evidence relevant to the determination of paternity.

[4]The husband does not raise any issues relative to his dismissal from the case. He concedes in his reply brief that "in a proper sequence of events an HLA blood test which excludes a putative father results in a mandatory dismissal pursuant to sec. 767.48, Stats." We agree.

(2) On the basis of the information produced at the pretrial hearing, the judge or family court commissioner conducting the hearing shall evaluate the probability of determining the existence or nonexistence of paternity in a trial and whether a judicial determination of paternity would be in the best interest of the child, and shall so advise the parties. On the basis of the evaluation, the judge or family court commissioner may make an appropriate recommendation for settlement to the parties. This recommendation may include any of the following:

(a) That the action be dismissed with or without prejudice.

(b) That the alleged father voluntarily acknowledge paternity of the child.

(c) If the alleged father voluntarily acknowledges paternity of the child, that he agree to the duty of support, the custody of the child, the visitation and other matters as determined to be in the best interests of the child by the judge or family court commissioner.

(3) If the parties accept a recommendation made in accordance with this section, judgment shall be entered accordingly.

(4) *If a party or the guardian ad litem refuses to accept a recommendation made under this section and blood tests have not yet been taken, the court shall require the appropriate parties to submit to blood tests.* After the blood tests have been taken the judge or family court commissioner shall make an appropriate final recommendation.

(5) *If the guardian ad litem or any party refuses to accept any final recommendation, the action shall be set for trial.*

(6) The informal hearing may be terminated and the action set for trial if the judge or family court commissioner conducting the hearing finds it

unlikely that all parties would accept a recommendation in this section. [Emphasis added.]

While sec. 767.46(2), Stats., contemplates a finding by the court regarding the best interests of the child, the statute couches this finding in terms of a recommendation to the parties. If a party or guardian ad litem does not accept the recommendation, the case proceeds as before. Sec. 767.46(4)–(5). The court may enter judgment in accordance with its recommendation only if all parties accept it.[5] Sec. 767.46(3).

Therefore, the trial court did not err in denying the husband's motion to dismiss insofar as the motion was premised on sec. 767.46, Stats. In addition, the husband's argument that his due process rights were violated by the failure to hold an evidentiary hearing on D.L.H.'s best interests is, at most, harmless error. Even if a hearing would have been held and the trial court would have made a specific finding that dismissal was in D.L.H.'s best interests, any party would have had the ability to turn down the court's recommendation. Therefore, we cannot conclude that the result would probably have been different. *Nimmer v. Purtell*, 69 Wis. 2d 21, 39, 230 N.W.2d 258, 268 (1975).

## EQUITABLE ESTOPPEL

The husband also alleges error in the trial court's failure to dismiss on the grounds that the mother was estopped from bringing the action.[6] The trial court did

[5]This is analogous to our joint custody statute which requires not only a finding that joint custody would be in the child's best interest, but also requires agreement by the parties. Sec. 767.24(1)(b), Stats.

[6]The husband's motion in the trial court concentrated on promissory estoppel, whereas his brief in this court argues

not discuss whether the elements of estoppel had been proved, but based its decision in part on sec. 767.45(2), Stats., dealing with agreements between an alleged or presumed father and the mother or child. Section 767.45(2) states in part:

> The court shall not approve any provision waiving the right to bring an action under this section if this provision is contrary to the best interests of the child.

The trial court concluded that D.L.H.'s rights to inheritance and support from his genetic father, as well as the right to know his genetic father's medical history, "override any potential estoppel."

The trial court's statements are unsupported by specific facts in the record and could apply to any paternity action. These statements appear to make a blanket conclusion that a determination of biological paternity is *always* in the best interest of the child. Such is not the case.

The trial court's statement amounts to a legal conclusion that equitable estoppel is unavailable in paternity proceedings. We owe no deference to a legal conclusion even when the trial court intended it as a statement of fact. *See Janesville Community Day Care Center, Inc. v. Spoden,* 126 Wis. 2d 231, 236, 376 N.W.2d 78, 81 (Ct. App. 1985).

We conclude that equitable estoppel may be available as a defense to the mother's institution of

equitable estoppel. We do not consider this discrepancy fatal as the two doctrines are closely related. *Compare Mercado v. Mitchell,* 83 Wis. 2d 17, 26–27, 264 N.W.2d 532, 537 (1978) *with Grams v. Melrose-Mindoro Joint School Dist. No. 1,* 78 Wis. 2d 569, 578–79, 254 N.W.2d 730, 735 (1977).

paternity proceedings under the facts of this case. In doing so, we follow the reasoning of the Supreme Court of Pennsylvania in *In re Adoption of Young,* 364 A.2d 1307 (Pa. 1976).

In *Young,* the natural mother gave birth during her first marriage, then legally separated from her first husband and remarried. Subsequently, she brought a proceeding to terminate her first husband's parental rights on the grounds that her second husband was the natural father.

The Pennsylvania court noted the relatively commonplace use of estoppel in the reverse situation— preventing putative fathers from denying paternity.[7] *Id.* at 1311–12. The court then applied similar reasoning to conclude that the mother was estopped from now questioning paternity.[8] *Id.* at 1312–13.

Equitable estoppel is applicable as a defense where three elements are present: (1) action or nonac-

---

[7]This court has recently approved the use of equitable estoppel in such a situation. *A.M.N. v. A.J.N.,* 141 Wis. 2d 99, 105, 414 N.W.2d 68, 71 (Ct. App. 1987). We, like the Pennsylvania Supreme Court, take notice of the fact that if the present case were before us and the husband were attempting to deny paternity, there is no doubt that the defense of estoppel could be raised against him. *See In re Adoption of Young,* 364 A.2d 1307, 1312 (Pa. 1976).

[8]The decision in *Young,* 364 A.2d 1307, apparently rests on alternative grounds of equitable estoppel and collateral estoppel. *See Commonwealth ex rel. Gonzalez v. Andreas,* 369 A.2d 416, 422 n. 2 (Pa. Super. Ct. 1976) (Spaeth, J., concurring and stating that "[i]n *Young* the doctrine of equitable estoppel could be applied without distorting it"). The collateral estoppel in *Young* arose out of the previous divorce wherein the mother alleged the child to be "of the marriage" and the court so found. *Young,* 364 A.2d at 1312–13.

tion which induces (2) reliance by another (3) to his detriment. *Mowers v. City of St. Francis,* 108 Wis. 2d 630, 633, 323 N.W.2d 157, 158 (Ct. App. 1982). The mother's actions in *Young* which induced reliance were numerous, including acceptance of child support payments after the separation. *Young,* 364 A.2d at 1312.

Here, because the representations or actions of the mother which are alleged to have induced the husband's reliance are disputed and are not the subject of any factual findings by the trial court, a remand is necessary to determine whether the elements of equitable estoppel have been met. The husband must prove those elements by clear, satisfactory and convincing evidence. *Mowers,* 108 Wis. 2d at 633, 323 N.W.2d at 158.

The husband alleges that detrimental reliance occurred in that he did not pursue formal adoption proceedings, but nonetheless developed a close parental relationship with D.L.H. in reliance on representations of the mother. The Michigan Court of Appeals, faced with the same situation in a divorce setting, adopted the doctrine of "equitable parent." *Atkinson v. Atkinson,* 408 N.W.2d 516, 519 (Mich. Ct. App. 1987).

The Michigan Court of Appeals held that the wife may establish the nonpaternity of the husband through blood tests, but that, notwithstanding the fact that the husband is not the biological father, he may acquire rights of paternity under the "equitable parent" theory. *Id.* at 517. The court reversed the trial court's decision to treat the husband as a third party when deciding custody and visitation. *Id.* at 519. In so doing, the court stated:

> [A] husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support.

*Id.*

██

We conclude that the considerations underlying the doctrine of "equitable parent" may be utilized by the trial court on remand for the purpose of determining whether the husband detrimentally relied on the mother's representations or conduct, if any such representations or conduct are found. We do not address the issue decided by *Atkinson,* namely, whether the "equitable parent" doctrine operates to elevate the husband in a divorce proceeding from third-party status to a natural parent.[9]

---

[9]The reason for seeking "natural parent" status rather than "third-party" evolves out of *Barstad v. Frazier,* 118 Wis. 2d 549, 348 N.W.2d 479 (1984). *Barstad* held that in a custody dispute between a natural parent and a third party, the court must first conclude that the natural parent is unfit or unable to care for the child or that there are compelling reasons to award custody to a third party. *Id.* at 568, 348 N.W.2d at 489. Only then may the court consider whether the best interests of the child would be promoted by awarding custody to a third party. *Id.* at 568–69, 348 N.W.2d at 489. When only the parents are involved, the principle is merely the "best interest of the child," *id.* at 555, 348 N.W.2d at 482, and no showing of unfitness, etc., is required.

The determination by the trial court on remand that the elements of equitable estoppel have been proven will not end this inquiry, however. The ultimate and overriding consideration must be the best interests of the child.[10] Whereas in most cases estoppel will not lie because of the necessity for financial support from the biological father, we note here the availability of support from the husband and his apparent willingness to provide it. The guardian ad litem's recommendation should also be considered by the trial court for this purpose.

We therefore reverse the trial court's equitable estoppel holding. We remand this matter to the trial court for a determination of: (1) whether the elements of equitable estoppel are proven by clear and convincing evidence; and (2) if so, whether the best interest of the child warrants application of equitable estoppel against the mother. The reinstatement of the husband as a party is directed for purposes of this remand proceeding. If following remand the court concludes that equitable estoppel is not proven, the matter should be set on for trial without the husband. If the court concludes that equitable estoppel is proven, then the court must determine whether the best interests of the child warrant application of the doctrine. If so,

[10]Consideration of the best interests of the child is in accord with the spirit of sec. 767.45(2), Stats., which provides that "[t]he court shall not approve any provision [of an agreement] waiving the right to bring an action under this section if this provision is contrary to the best interests of the child." However, we do not conclude that this situation is governed by sec. 767.45(2), as we are not presented with an agreement. Furthermore, waiver and estoppel are not interchangeable doctrines. *See In re Estate of Alexander*, 75 Wis. 2d 168, 176, 248 N.W.2d 475, 480 (1977).

the matter should be dismissed; if not, the matter should be set on for trial without the husband.[11]

Costs are denied to both parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

---

[11]The husband also alleged error regarding the admissibility of psychological evidence. The husband's brief suggests that the trial court's ruling would apply to any subsequent hearing in the case. However, we view the court's ruling as applying *only* to the paternity trial from which the husband was dismissed. This issue is moot as we conclude that should this case go to trial, the husband will no longer be a party thereto. We need not address moot issues. *Warren v. Link Farms, Inc.,* 123 Wis. 2d 485, 487, 368 N.W.2d 688, 689 (Ct. App. 1985).